### G., C. & S. F. R'y Co. v. James S. Greenlee et ux.

(Case No. 1678.)

1. RAILWAY COMPANY — PUBLIC HIGHWAY.— In the construction of a railway which crosses a public highway, it is not only the duty of the railway company to leave the highway in such condition that its usefulness will not be impaired, but when its approaches have been materially interfered with by the construction work, these also must be left in as good condition as they were before the railway was built.

2. CHARGE OF COURT.— Unless it is made to appear that an erroneous charge, which was calculated to mislead the jury, did not have this effect, the judgment will be reversed. The burthen of showing that no injury resulted is, in such case, on the appellee.

3. DAMAGES — RAILWAY COMPANY.— The omission of a railway company to place a sign at the point where it crosses a public road will not render the company liable for injuries inflicted on one traveling the road at the crossing who knew, or might have known by the exercise of ordinary care, of the crossing place in time to have avoided injury from a passing train.

4. EXCESSIVE DAMAGES.— An appellate court can only grant relief on the ground that a verdict in a suit for personal injuries inflicted by the negligence of another is excessive, when the amount is so disproportionate to the injuries inflicted as to evidence a wrong motive on the part of the jury.

5. SAME.— In a case like the present, the jury should consider from the evidence whether the injury is permanent or temporary, its effect upon the person injured, whether it was calculated to produce death or serious apprehension of death, loss of time, diminished ability to earn money by some employment familiar to the injured party, pain and suffering, including mental anguish, and expenses caused by the injury. Concerning all these elements of damage, evidence should be offered as far as practicable.

6. NEGLIGENCE — DAMAGES.— In a suit for damages by husband and wife for injuries inflicted by a passing railway train on the latter, while she with her husband was passing over a railway crossing, and in a vehicle driven by the husband, held, that the wife would be bound by the negligence of the husband.

APPEAL from Bosque. Tried below before the Hon. Jo Abbott.

Suit by husband and wife in behalf of the latter, for personal injuries from alleged negligence of the defendant and its servants.

On the 29th of September, 1881, James S. Greenlee and his wife, Lou M. Greenlee, the plaintiffs in this cause, with their five children, were traveling from the town of Meridian, to Comanche Springs, in a wagon drawn by a yoke of oxen, along the public road. This highway and the defendant's railway cross each other about four miles south of Meridian; and, as the plaintiffs' wagon and team were approaching this crossing and were near thereto, a south-bound freight train of the defendant, operated by its servants, passed the point of intersection of the two roads, when the plaintiffs' oxen turned suddenly and sharply to one side, upsetting the wagon and casting Mrs. Greenlee upon the ground, inflicting upon her bodily injuries.

Mrs. Greenlee and her husband brought this suit to the January term, 1882, of the Bosque county district court, to recover, in her behalf, $20,000 actual or compensatory damages and $10,000 exemplary damages for the injuries thus received by her.

The amended original petition contained two counts. The grounds of action in the first count were that the defendant had negligently placed, at and near the intersection of its railway with the highway, heaps of earth and other obstructions to the view of a traveler approaching the intersection along the highway; that in constructing its railway across the highway, the defendant had, by embankments and excavations, altered the condition of the highway at the point of intersection, rendering it and the approaches thereto unsafe to travelers in vehicles, and had negligently failed to restore it to its proper condition, or to erect at or near the point any sign to give notice of the proximity of its railway and warn persons of the necessity of looking out for the cars; that, as the plaintiffs, unconscious of the approach or proximity of any train, were, on the 29th of September, 1881, approaching the intersection, in a wagon drawn by oxen, along the highway, and were about to cross the railway at the intersection, a locomotive operated by defendant's servants and drawing a train of cars of defendant, by and through defendant's negligence, without blowing any whistle or ringing any bell, ran on the railway across said highway, at a great rate of speed, and, without any fault or negligence on the part of plaintiffs, struck the wagon and team with great violence, knocking down the team and overturning said wagon, thereby violently throwing Mrs. Lou M. Greenlee upon the ground and inflicting great and serious injuries upon her shoulder, hip and spine, from which she was confined to her bed many months; and that defendant's servants, after they had discovered plaintiffs, maliciously, and with gross negli-

gence, continued the train at its former speed, and made no effort to stop the same.

To plaintiffs' petition the defendant pleaded: 1st, general demurrer; 2d, special demurrers to so much of the first and second counts of said petition as sought to recover of defendant exemplary damages; 3d, the general issue; 4th, that the injuries complained of were caused by the negligence and improper conduct of the plaintiffs, and not otherwise; 5th, that the alleged injuries to Mrs. Greenlee, if, in fact, any hurt or injury had happened to her, were caused by the plaintiffs' careless and improper management of their team and its unruliness as they were approaching the crossing, and without any default of defendant; 6th, contributory negligence on the part of the plaintiffs.

The court overruled the defendant's general demurrer, but sustained its special demurrers to plaintiffs' claim in the first and second counts of their amended original petition, for exemplary damages. The cause was tried by a jury. Verdict for plaintiffs for $15,000, and judgment.

*Gresham & Jones*, for appellant, on the proposition that the judgment should be reversed for an erroneous charge calculated to mislead, and based on a conjectural state of facts, cited: Andrews *v.* Marshall, 26 Tex., 212; Andrews *v.* Smithwick, 20 Tex., 111; Railway Co. *v.* Houston, 95 U. S., 697; United States *v.* Breitling, 20 How. (U. S.) 252; McKeon *v.* R'y Co., 42 Mo., 79; Michigan Bank *v.* Elder, 9 Wall. (U. S.), 544; Kennedy *v.* R'y Co., 36 Mo., 352; Graham & Waterman on New Trials, vol. 3, p. 824.

On the measure of damages, they cited: Railway Co. *v.* Le Gierse, 51 Tex., 190 and 204; Railway Co. *v.* Arms, 91 U. S., 494; Railway Co. *v.* Kelly, 31 Pa. St., 372; Railway Co. *v.* Zebe, 33 Pa. St., 318; Thompson on Neg., vol. 2, p. 1255; Sutherland on Damages, vol. 1, 17 and 18; Sedgwick on Dam., vol. 1, 34 and note a.

That the wife is bound by the negligence of the husband, they cited: Carlisle *v.* Sheldon, 38 Vt., 440; Lake Shore, etc., Railway Co. *v.* Miller, 25 Mich., 273; Allyn *v.* Boston, etc., Railway Co., 105 Mass., 77; Pierce on Railroads, 283.

*Lumpkin, Alexander & Winter*, for appellee, cited: Texas Pac. R'y Co. *v.* Chapman, 1 Law Rev., 395 (57 Tex., 75); Hubby *v.* Stokes, 22 Tex., 217; Carter *v.* Eames, 44 Tex., 547; McClane *v.* Rogers, 42 Tex., 214; 5 Tex., 318; McFarland *v.* Wofford, 16 Tex., 610; Thompson on Charging Jury, sec. 117; H. & T. C. R'y Co. *v.*

Gorbett, 49 Tex., 573; Wood v. Chambers, 20 Tex., 247; Spearman v. California St. R., 8 Am. and Eng. R'y Cases, 193.

Watts, J. Com. App.— Where a railroad intersects or crosses a public highway, the statute imposes upon the company the obligation to restore the highway either to its former state, or to such condition as not to unnecessarily impair its usefulness, and also to keep the crossing in good repair. If, therefore, after constructing a railroad across a public highway, the company restores it to such condition as not to unnecessarily impair its usefulness as a highway, and keeps the crossing in good repair, the company will then have discharged the duty imposed by the statute.

Upon that branch of this case the court instructed the jury as follows:

" The law of this state requires railway companies to keep in good repair all crossings of public highways and the approaches thereto. . . . If you believe from the evidence that the plaintiff Lou M. Greenlee was injured as alleged in the petition, and that such injury resulted from a collision of the plaintiffs' wagon with defendant's train; that is, that said collision was caused by the neglect of defendant's employees . . . to keep said crossing in good repair, as required by law, and that the plaintiffs were in no way themselves guilty of negligence in approaching said crossing, then, if you so believe, you will find for plaintiffs. . . . Or, if you believe from the evidence that there was no collision between the plaintiffs' wagon and the defendant's cars, but believe from the evidence that the plaintiffs' approach to said crossing was made with ordinary care, caution and prudence, and that by reason of the negligence of defendant's employees . . . to keep said crossing and the approaches thereto in good repair, as required by law, the plaintiffs' oxen came in such close proximity to the railroad, before the approaching train was discovered, as to cause said oxen to take fright and overturn the plaintiffs' wagon, and that thereby the said Mrs. Lou M. Greenlee was injured as alleged, you will, if you so believe, find for the plaintiffs."

That instruction the appellant claims is erroneous and misleading, as there was no evidence tending to show that the condition of the crossing contributed to the accident. All the evidence as to the condition of the crossing and its approaches is found in the testimony of James S. Greenlee, J. N. Parks and V. B. Wilson. It was admitted that the highway upon which appellees were traveling at the time of the accident was a second class public road. Green-

lee says that in the direction he was traveling, before reaching the railroad, the highway goes down a hill, where for some distance it is tolerably steep, but nearer to the railroad the descent is not so abrupt.  Wilson makes about the same statement.  Parks says he thinks the descent next to the railroad is perhaps a little more abrupt now than it was before the railroad was constructed, on account of some dirt they threw upon the road.

None of the witnesses state that the highway has been so impaired by the construction of the railroad as to interfere with its usefulness.  Nor is there any testimony tending to show that such a result followed the construction of the railroad.  There is no evidence as to the condition of the crossing proper.

It should be observed that by the instruction stress is laid upon the duty of the company to keep the approaches to the crossing in good repair.  In fact the same obligation is imposed with respect to the approaches as to the crossing.  While the statutory requirement is to place the highway in such condition "as not to unnecessarily impair its usefulness," and while it does not, *eo nomine*, mention approaches to the crossing, nevertheless it intends that where these have been materially interfered with by the construction, then the duty rests upon the company to place them in such condition as not to materially impair the highway.

Here the trouble arises as to the meaning of the term "approaches," as used in the instruction, and as to what the jury understood it to include.  It seems that at the point of intersection the railroad and highway were upon a level with each other.  Then it is not true that the company would be under obligation to change the highway so as to avoid the hill, about the descent of which appellee complains, or to so grade the hill as to place the highway in a better condition than it was before the construction of the railroad.  The utmost limit of the statutory requirement is that the highway shall be restored to its former state, or else to such condition as not to unnecessarily impair its usefulness.  None of the witnesses say that the highway was left in such condition as to thus impair its usefulness, nor is there any evidence from which such a deduction could be made.

Parks says that the descent nearest the crossing has perhaps been rendered a little more abrupt by the dirt which had been thrown upon it, but as to whether the dirt of which he speaks was placed there as a matter of convenience to those who constructed the railroad, or for the purpose of remedying some defect in the highway, is not made to appear.  Nor does it appear that the dirt to which

he refers in any way impairs the usefulness of the highway. Green-lee complains of the first descent, which, he claims, was at an angle of about forty-five degrees. This was as he came down the hill, some distance from the crossing.

Surely, under the state of case presented by the record, no one would insist that the company was under any legal obligation to grade the hill over which the highway passed in approaching the point of intersection. And yet, from the instruction, the jury might, and probably did, so understand the rule of law to be applied to the facts of the case. There is no legal obligation resting upon railroad companies to repair the public highways of the country, except when these have been interfered with by the construction of the railroad, and then the obligation is limited, as heretofore shown.

Where an erroneous charge, as applied to the case made by the evidence, is in its nature calculated to mislead the jury, and it is not made to appear that such was not its effect, the judgment will be reversed. Although a charge may be correct as applied to a particular branch of the case, still, if it is calculated to mislead the jury, and it does not appear from the record that no injury resulted, it will be deemed erroneous and cause for reversal. Spence v. Ou-stott, 3 Tex., 147; H., E. & W. T. R'y Co. v. Hardy, 61 Tex., 230.

While the appellate court will indulge in the presumption that the verdict and judgment are right, yet when it is apparent that the charge upon a vital issue is erroneous, it yields to the contrary presumption that the verdict, which might be founded upon an erroneous charge, is itself vicious. In such case the duty does not devolve upon the party complaining to show that he was thereby injured, but upon him in whose favor it was returned, to show that the complaining party was not prejudiced by the error.

After a careful examination of the record, we conclude that the jury may have been misled by the instruction, to appellant's prejudice.

Other questions are presented by the assignment of errors which, in view of another trial, may be, with propriety, briefly considered.

Whilst the statute imposes upon the company the duty of placing signs at points where public highways cross the railroad, still it is well settled that, if the party injured ascertained or knew the point of intersection in time to avoid injury from passing trains by the exercise of reasonable care and prudence, then the failure to place the sign as required would not give a right of action for injuries received from other causes.

Upon that point there is seeming confusion in the statements of Greenlee. He says that he recognized or rather identified the point of intersection when he was still distant one or two hundred yards from the crossing and while he was yet upon the hill. From that point all the witnesses concur that the railroad is in plain view toward the north for about three-fourths of a mile, and that approaching trains may be seen for that distance without any interposing obstruction.

Now if, after recognizing or identifying the point of intersection, he could, by the exercise of reasonable care, have avoided the injury, then the failure to erect the sign would not be held to have contributed to the injury. The object of requiring the sign is to point out to and inform the traveler upon the highway of the point of intersection, so that by the exercise of reasonable care he may avoid injury from passing trains. But where it is made to appear that he knew of the place of crossing, in time to avoid injury by the exercise of reasonable care, the statutory requirement would have no application.

In another portion of his evidence Greenlee says that he did not see the crossing until he was within thirty or forty yards of it, and when it was too late to avoid the injury. If by these statements the witness meant that while upon the hill he ascertained or identified the crossing, but in fact did not see the very crossing until he was within thirty or forty yards of it, then the latter statement would be no qualification of the former. For if the sign had been erected as required, while it would have enabled him to have identified the place of intersection, yet it is not perceived how that would have enabled him to have seen the actual crossing any sooner than he did, as it appears that the crossing in fact cannot be seen until the embankment near it has been passed.

However, if the witness meant by the latter to qualify or correct the former statement, and in fact did not identify the place of crossing until he was within thirty or forty yards of it, and when by the exercise of reasonable care he could not have avoided the injury, then the failure to erect the sign might become material.

As remarked in the case of H. & T. C. R'y Co. v. Wilson, 60 Tex., 144, "Persons approaching such crossings should exercise due care to ascertain whether there are trains approaching so as to render passing the track hazardous. The criterion furnished by the law for ascertaining the measure of such care is that which would be exercised by a reasonably cautious and prudent person under like circumstances."

Abstractly considered the charge to the effect that the law furnishes no rule for the measure of damages in this case is erroneous. Compensation for the injury is the legal rule for the measure of damages. True, the law does not furnish the rules for computation in dollars and cents, as in some other class of cases; still the rule is as imperative as if it did, for the jury cannot rightfully allow anything beyond compensation, which is to be estimated upon the evidence by the exercise of a reasonably just judgment.

The difficulty arises in the practicable application of the rule on account of the uncertainty with respect to the subject-matter. But in a faithful discharge of duty the jury, after a careful consideration of the evidence, and in the exercise of a just judgment, can but weigh out to the injured party what that judgment shall dictate as an exact equivalent for the injury inflicted. It was never contemplated that the jury should award the amount which it might desire the injured party to have, for that would result in substituting caprice or personal preference for sound, unbiased judgment, exercised under the solemn sanctions of an oath.

From the nature of the case the appellate court can only grant relief, on the ground of excessive verdict, when it is so disproportionate to the injury inflicted as to evidence a wrong motive upon the part of the jury in making the estimate. That being true, it is the more important that juries should exercise a cautious and deliberate judgment in passing upon the evidence and in awarding compensation to the injured party, as there seems to be some indisposition upon the part of trial courts to award new trials in such cases.

In this character of case every particular and phase of the injury ought to enter into the consideration of the jury. Such as whether the injury is permanent or transitory; its effect upon the physical system; whether in its nature calculated to produce death or grave apprehensions of death; loss of time; diminished ability to earn money by the usual avocation of the party; pain and suffering, including mental anguish, and expenses occasioned by the injury. In support of each of these elements evidence is admissible, and it is incumbent upon the party seeking redress, so far as the nature of the case admits and within reasonable limits, to fully enlighten the jury by evidence as to each element of damage claimed.

It may be remarked, however, that the court measurably cured the defect about which the complaint is made, by telling the jury to find such amount as it thought would be compensation.

Under the circumstances of this case it is quite clear that Mrs.

Greenlee might well rely upon the prudence and caution of her husband in making the approach to, as well as crossing, the railroad. The correlative of the proposition is also true, that she would be bound by his negligence or want of due care.

Our conclusion is that the judgment ought to be reversed and the cause remanded

REVERSED AND REMANDED.