GALVESTON, H. & S. A. RY. CO. v. KELLOGG. (No. 374.)

(Court of Civil Appeals of Texas. El Paso. Dec. 17, 1914. Rehearing Denied Jan. 7, 1915.)

1. APPEAL AND ERROR (§ 501*)—QUESTIONS REVIEWABLE—GIVING AND REFUSAL OF INSTRUCTIONS—EXCEPTIONS—RECORD.

Error in giving and refusing instructions is deemed waived, where the record contains no exceptions, as required by Acts 33d Leg. c. 59 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1954, 1970, 1971, 1973, 1974, 1984a, 2061).

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2300–2305; Dec. Dig. § 501.*]

2. TRIAL (§ 412*)—ERROR IN ADMITTING EVIDENCE—CURING BY OTHER EVIDENCE.

Error in permitting one to give secondary evidence of the contents of an instrument because notice to produce the original had not been given is not cured by a cross-examination eliciting the same testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 182, 974–977; Dec. Dig. § 412.*]

3. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR — ERRONEOUS ADMISSION OF EVIDENCE.

Error in admitting evidence in support of an allegation in the petition, deemed confessed because not denied, is harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

4. APPEAL AND ERROR (§ 742*)—QUESTIONS REVIEWABLE — ASSIGNMENTS OF ERROR — PROPOSITIONS.

An assignment of error not supported by a proposition, and not a proposition within itself, will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

5. APPEAL AND ERROR (§ 742*)—QUESTIONS REVIEWABLE — ASSIGNMENTS OF ERROR — STATEMENTS.

An assignment of error will not be considered where there is no statement subjoined showing the substance of the proceedings and the record relied on to support it, and it is not sufficient to merely refer the court to the parts and pages of the record relied on.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

6. APPEAL AND ERROR (§ 548*)—QUESTIONS REVIEWABLE—ADMISSION OF TESTIMONY—ASSIGNMENT OF ERROR.

An assignment of error complaining of the admission of testimony cannot be reviewed, where the court's attention is not directed to any bill of exceptions taken thereto.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2433–2440; Dec. Dig. § 548.*]

7. APPEAL AND ERROR (§ 544*)—ASSIGNMENT OF ERROR—INSTRUCTIONS—REVIEW.

An assignment of error complaining of an instruction will be overruled, where the court is not referred to any bill of exceptions taken to the instruction.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2412–2415, 2417–2420, 2422–2426, 2428, 2478, 2479; Dec. Dig. § 544.*]

8. APPEAL AND ERROR (§ 882*)—QUESTIONS REVIEWABLE—INVITED ERROR.

Where a charge added by the court was in response to objections made by a party, error in the charge must be deemed invited by the party, estopping him from complaining.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

9. APPEAL AND ERROR (§ 758*)—QUESTIONS REVIEWABLE — ASSIGNMENTS OF ERROR — BRIEF—RECORD.

An assignment of error, as copied in the brief, which materially varies from the original in the record, cannot be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3093; Dec. Dig. § 758.*]

10. DAMAGES (§ 130*)—PERSONAL INJURIES—EXCESSIVE DAMAGES.

An engineer jumped from his engine to avoid a collision and fell to the ground, alighting on his shoulder and neck in a sandy place. He rolled on the ground about 35 feet and was considerably stunned and badly scared. He immediately got up in a dazed condition and began to hunt for his fireman and brakeman, who had also jumped from the engine. A physician testified that the engineer called on him the next day and stated that he was hurt about the back and shoulders, but not hurt much. He consulted another physician who examined him but did not prescribe. Osteopath physicians treated him for several weeks and took some of the soreness and stiffness out of him. He suffered from nervousness which might have been caused from the accident. He made no claim for damages before bringing suit. Held, that a verdict for $12,500 was so excessive as to show passion or prejudice of the jury authorizing the court to reverse the judgment and remand the case.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–367, 370; Dec. Dig. § 130.*]

Appeal from District Court, El Paso County; Dan M. Jackson, Judge.

Action by W. T. Kellogg against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Beall & Kemp and Peyton F. Edwards, all of El Paso, and Baker, Botts, Parker & Garwood, of Houston, for appellant. Wallace & Gardner, of El Paso, for appellee.

HIGGINS, J. Kellogg brought this suit to recover damages arising from personal injuries alleged to have been sustained while operating a locomotive on the joint track of appellant and the Texas & Pacific Railway Company. He alleges that on said date, while employed by the Texas & Pacific Railway Company as a locomotive engineer, his engine collided with the rear end of a freight train belonging to the defendant, Galveston, Harrisburg & San Antonio Railway Company; that said collision was caused without any fault or negligence on his part, but was due to the negligence of the employés of the Galveston, Harrisburg & San Antonio Railway Company in stopping their train on the main line between stations on a curve and in such a position that the train could not be discovered by plaintiff while approaching from the east; that the rule of the defend-

ant required that, when a train was stopped on the main line between stations, the same should be protected in the rear by fuses thrown out of the train, by torpedoes, and by flagmen; that the employés in charge of the freight train of defendant, Galveston, Harrisburg & San Antonio Railway Company, failed to properly protect the rear end of said train, as required by the rules, and that by reason thereof plaintiff did not discover said train in time to have avoided a collision. Plaintiff further alleges that at or about the time his train collided with the rear end of said train, in order to save his life or prevent serious injury, he jumped from said engine while same was in motion and was seriously and permanently injured.

[1] The first four assignments complain of the court's general charge and of the refusal of requested special charges.

We find no exceptions in the record, as required by Acts of Thirty-Third Legislature, p. 113, and the error, if any, must be considered as waived. We express no opinion as to whether the objections are well taken, which are urged to the general charge, or whether the special charges should have been given.

[2] Error is assigned to the action of the court in permitting Kellogg to testify that he sent a telegram to the defendant's chief dispatcher from Ft. Hancock, advising that his engine had no headlight, because notice to produce the original had not been given, and secondary evidence of the contents of the telegram was, therefore, not admissible. Appellee contends that this objection was waived because appellant upon cross-examination elicited the same testimony and caused him to repeat the same, and our attention is called to a number of cases supporting this view; but it is sufficient to say they were all overruled by Cathey v. Railway Co., 104 Tex. 39, 133 S. W. 417, 33 L. R. A. (N. S.) 103. The objection should have been sustained, but the erroneous admission of the testimony is regarded as harmless.

[3] In a supplemental petition plaintiff alleged that, 24 miles from the point where the collision occurred, his headlight got out of order; that he was unable to fix it, which fact he wired to defendant's agents. This allegation was not denied, and was therefore regarded as confessed; and, since the objectionable testimony simply substantiated this confessed allegation, its erroneous admission would appear to be harmless.

[4, 5] The sixth and seventh assignments cannot be considered because: First, they are not supported by propositions as required by the rules, and are not propositions within themselves; second, no statements are subjoined showing the substance of the proceedings in the record relied upon to support the assignments. It is not sufficient to merely refer the court to the parts and pages of the record relied upon. Canal Co. v. Southwell, 109 S. W. 435; Walker v. Railway Co.,

54 Tex. Civ. App. 406, 117 S. W. 1020; Railway Co. v. Lane, 118 S. W. 847; Railway Co. v. Wafer, 130 S. W. 712; Broussard v. Rice Co., 120 S. W. 587; Lumber Co. v. Chambers, 41 Tex. Civ. App. 632, 95 S. W. 607; Johnson v. Lyford, 9 Tex. Civ. App. 85, 29 S. W. 57; Johnson v. Hulett, 56 Tex. Civ. App. 11, 120 S. W. 257.

[6] The eighth assignment complains of the admission of testimony. Our attention is not directed to any bill of exception taken thereto, and, without same, this matter cannot be reviewed.

[7] The ninth assignment complains of the court's charge. It is overruled because we are not referred to any bill of exception taken to the portion of the charge complained of.

[8] Furthermore, it would seem from the objections to the charge filed by appellant that the portion to which it now objects was added in response to objections which it made. In such case it must be held that the error was invited and appellant thereby estopped from complaining.

[9] The tenth assignment, as copied in brief, materially varies from the original in record. For this reason it cannot be considered. Ruth v. Cobe, 165 S. W. 530, and cases there cited. See, also, Edwards v. Youngblood, 160 S. W. 288; Iowa Mfg. Co. v. Walcowich, 163 S. W. 1054; Dees v. Thompson, 166 S. W. 56; Overton v. K. of P., 163 S. W. 1053; Smith v. Bogle, 165 S. W. 35; Lakeside Irr. Co. v. Buffington, 168 S. W. 21; Coons v. Lain, 168 S. W. 981.

[10] The eleventh assignment is to the effect that the amount of the verdict is so grossly excessive as to evidence the fact that it was the result of prejudice.

A brief summary of the evidence bearing upon the nature and extent of the plaintiff's injuries and resulting damage is as follows:

Plaintiff was an engineer in the employment of the Texas & Pacific Railway Company, whose trains were operated at the point of the accident upon the joint track of said company and the Galveston, Harrisburg & San Antonio Railway Company, appellant herein. On the night of November 25, 1912, plaintiff was operating an engine drawing a Texas & Pacific train. His engine ran into the rear end of a freight train of the appellant's. Plaintiff testified: That when he saw the caboose of the train into which his engine was about to plunge, he jumped from his engine and fell to the ground, lighting on his shoulder and neck in a sandy spot. That he immediately got up in somewhat of a dazed condition. Upon striking the ground, he rolled about 35 feet and was considerably stunned and badly scared. That he really did not know then whether there was anything the matter with him or not. The first thing he did was to begin to hunt for his fireman and a brakeman who had also jumped from the engine. After he found them, he begun to get stiff in his left leg and hip and in the left side of his back, and

his neck was stiff and he could not turn it for a long time, and he is not entirely over it yet. There was a place on his back as big as a fist that felt like a stone bruise. At the time of the accident he made no complaint to any one of being hurt.

Dr. Miller, the physician for the Texas & Pacific Railway Company, testified: That the morning after the wreck he visited plaintiff, talked with him, and asked where he was hurt. Plaintiff said he was hurt about his back and shoulders and the back of his head. That he did not examine his injuries, as he said he was not hurt much, being just a little sore. This testimony of Dr. Miller is not contradicted by plaintiff.

The plaintiff further testified: That he went to see Dr. Miller the next morning after the wreck, who gave him some liniment, some salve, and perhaps some capsules. That he did not go to see Dr. Miller again. That after seeing Dr. Miller he was not satisfied with his condition and went to Dr. Richmond, who examined him, but did not prescribe. That he was not satisfied with what Dr. Richmond said, so, about December 1st, he went from El Paso to Sherman to see Dr. Loving, an osteopath, who was an old friend of his. That he was under Dr. Loving's treatment six weeks or two months. That he did not give him any medicine but treated him by rubbing. That since coming back to El Paso he has been treated by Dr. Pearce, who is also an osteopath. This treatment took some of the soreness and stiffness out of him. He also saw Dr. Wright and Dr. Higgins, and they did not give him any medicine. These last two mentioned doctors he went to see after bringing suit. That he never presented any claim on account of the wreck to either the Galveston, Harrisburg & San Antonio Railway Company or to the Texas & Pacific Railway Company prior to bringing suit, and he was still on the pay roll of the latter company as an employé. That his suit was not filed until March or April, 1913. Prior to this accident he had been a strong, healthy man, except that he was slightly deaf. That he has not been able to do any work since he got hurt. That he had not exactly tried to do any work. That he tinkered around a grocery store a little bit, and after a while got sick and would have to lie down. If he reached up for a can or something on the shelf, a pain would hit him in the back, just like running a knife into him, and he would almost fall on the floor, and the next thing he would get sick at his stomach and take a severe headache and would have to go and lie down until he got over it, and he has not been able to earn any money since he got hurt.

Drs. Wright and Miller were the only physicians called to testify in the case. Miller testified as above indicated, having been called by defendant. Dr. Wright, called by plaintiff, in substance testified: That he first examined plaintiff several months previous to the date of the trial, in November, 1913. He found plaintiff complained of suffering in his back and hip, headaches, sleeplessness, and poor appetite, and of not being able to do anything. That he examined him four or five times, the last occasion the day before his testimony was given, at which time his physical condition was about the same as at first, except he had gained some weight. His hearing was impaired one-half, and there was no change in his hearing. If, prior to November, 1912, Kellogg was employed as a railway engineer and was strong and healthy, not suffering any with nervousness, and his engine ran into the rear of another engine, and he jumped off just before the collision occurred and rolled down an embankment, he would say that this could be the cause of his nervousness, but not for his hearing. That, in his opinion, his injuries and condition were permanent—it would be better at times and worse at times. That he did not prescribe for him, except upon one occasion he gave him some medicine for diarrhea. He found him nervous and his nervous system out of order. His nervous reflexes and things of that kind were a little bit exaggerated. He had the appearance of a nervous man. Nervousness was all he discovered. He did not need medicine for these things and did not know of anything that would do him any good. From his examination he did not discover any injury to his spine—nothing except an apparent tenderness there. His nervousness might just have been from disease, or it might have been from a fall or blow, or it might have really existed from what they call a condition of neurasthenia. Anything that diverts the mind from what he has it on is good for that condition—a settlement—getting a little money is good for that condition. With plaintiff's nervous condition, he did not think he could do prolonged physical labor. He could probably do the work for an hour or two, but would give down. When he made his last examination, plaintiff had gained several pounds in weight. He could see no difference in his nervous system. The only thing he discovered was nervousness, which was a form of neurasthenia.

A verdict was returned and judgment rendered for $12,500. A mere perusal of the foregoing testimony, it seems to us, is sufficient to demonstrate that a verdict of $12,-500 in this case is grossly and outrageously excessive. It is so regarded by this court. It is so excessive that it is evident the verdict of the jury was based upon passion or prejudice, rather than a fair consideration of the evidence. In such a case, it is our plain duty to interfere and require a remittitur or reverse and remand. Freeman v. Grashel, 145 S. W. 695; Railway Co. v. Greenlee, 62 Tex. 344; Railway Co. v. Tele-

graph Co., 69 Tex. 277, 5 S. W. 517, 5 Am. St. Rep. 45; Railway Co. v. Greb, 132 S. W. 489; Railway Co. v. Blalack, 128 S. W. 706; Studebaker v. Kitts, 152 S. W. 465. While we are not prepared to say that there is no evidence to show the causal connection between the accident and the nervous condition of the plaintiff, yet it is of a most unsatisfactory nature. The evidence also strongly tends to show negligence upon plaintiff's part, directly contributing to the accident. Ordinarily the court may safely undertake to remedy an injustice of this kind by requiring a remittitur in such an amount as would meet the exigency of the case; but where the verdict is so grossly excessive as it is in this case, and especially where the evidence is so unsatisfactory on the issue of liability vel non, it is evident that the defendant has not had that fair and impartial trial to which it was entitled, and the ends of justice imperatively demand that the cause be reversed and remanded.

Reversed and remanded.