Western Union Telegraph Co. *v.* Halbert.

[86 South. 760, No. 21355.]

Commerce. *Limitation of liability for nondelivery of interstate telegram held binding.*

Where a suit was instituted for damages for the nondelivery of a telegram, and a special plea was filed alleging that the message was an interstate message, and that conditions written on the back of the telegram exempted the company from damages beyond a certain mount stated therein, it was error to sustain a demurrer to such pleas, and where the amount recovered was in excess of the maximum amount stipulated for in the contract, the judgment will be reversed.

Appeal from circuit court of Lee county.

Hon. C. P. Long, Judge.

Action by J. D. Halbert against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*J. B. Harris, W. B. Houston, Sr.,* and *W. B. Houston, Jr.,* for appellant.

The second and third special pleas set up the fact that the message in question was an interstate message for the reason that the message was relayed through relay office at New Orleans, Louisiana, which is its proper relay of-

fice for handling messages between Starkville and Tupelo, Mississippi, and that being an interstate message it was governed by the stipulation .contained on the blank on which the message was written limiting the liability of the company.

The second plea set up the unrepeated clause. The third plea set up the fact that the message was a valued message and under the stipulation contained on the blank there could be no recovery in any event above the sum of fifty dollars.

These pleas therefore, present for the consideration of this court, the question as to whether a message between two points within the state which in the course of its proper and regular transmission is relayed out of the state, is an interstate message and as such is governed by the acts of Congress the contract and the common-law rules as interpreted by the federal court.

Of course if this message was interstate commerce it is governed by the decisions of this court in the case of *Western Union Telegraph Company* v. *Norman* and *Western Union Telegraph Company* v. *Bourne* recently decided by this court; also *Postal* v. *Eubanks,* 83 So. —.

Although there has been some conflict in the decision in the state courts on the question as to whether such a message would be interstate commerce we respectfully submit that the question is definitely set at rest by the decision of the supreme court of the United States in the case of *Postal Telegraph Company* v. *Warren-Godwin Lumber Company,* Advanced Sheets, January 1, 1915, No. 4, page 95, and *Western Union Telegraph Company* v. *Beogli,* Advanced Sheets, January 1, 1915, No. 4, page 95, and *Western Union Telegraph Company* v. *Beegli,* Advanced Sheets, February 1, 1920, No. 6, page 197. In the opinion in the *Warren-Goodwin Lumber Company case* the supreme court cited a number of decisions from various state courts and some inferior federal courts giving each phase of the question then presented to the court as to the effect of the Act of Congress of June 19, 1920, the court

said after citing with approval *Gardner* v. *Western Union Telegraph Company*, 231 Fed. 405, and by the numerous and conclusive opinions of state courts of last resort considering the Act of 1910 from various points of view reached the conclusion that the act was an exertion by Congress of its authority to bring under federal control the interstate business of telegraph companies and therefore was an occupation of the field by Congress which excluded state action.

Among other cases cited by the supreme court of the United States as presenting the question from various points of view are the cases of *Bateman* v. *Western Union Telegraph Company*, 174 N. .C. 97, 93 S. E. 467; *Norris* v. *Western Union Telegraph Company*, 174 N. C. 92, S. E. 465; *Western Union Telegraph Company* v. *Lee*, 147 Ky. 210, 194 S. W. 70. We call the court's attention to the fact that the Bateman case referred to above and cited by the supreme court of the United States with approval the sole question passed upon by the court was whether messages relayed out of the state as in the case at bar were interstate messages. The same question was presented in the case of *Norris* v. *Western Union Telegraph,* and in the case of *Lee* v. *Company, supra,* both cited with approval of the supreme court of the United States, each holding that such messages were interstate commerce. See *Western Union Telegraph Company* v. *Bolling* (Va.), 91 S. E. 154; *Western Union Telegraph Company* v. *Kaufman* (Okla.), 162 Pac. —; *Davis* v. *Western Union Telegraph Company* (Kans.), decided at the March term 1918; *Taylor* v. *Western Union Telegraph Company* (Kans.), decided March term, 1918; *J. E. & Alma Mayberg* v. *Western Union Telegraph Company* (S. C.), 96 S. E. 48. The same point was involved in the case of *Gardner* v. *Western Union Telegraph Company, supra.*

In the case of *Glover* v. *Western Union Telegraph Company* (Ala.), which we have cited above on another point, the Alabama court took the view that such message was not interstate commerce, but we call the court's attention

to the fact that that case was submitted and tried prior to the decision of the supreme court of the United States in the Warren-Godwin Lumber Company case. If that decision had been before the Alabama court at the time we are satisfied, in the light of that case the holding of the Alabama court would have been different.

In one of the decisions that we have cited it was said, that if the telegraph company not in good faith but fraudulently, and for the purpose of evading state laws was to relay a message out of the state this might affect the question. But there is no evidence in this case of any bad faith or fraud and under the settled rule such cannot be presumed. It is doubtful, however, whether or not the court would inquire into the motive of the telegraph company in relaying messages out of the state. The determining question is, was the message through its entire transmission wholly within the state; if it was it was intrastate commerce, if not it was interstate commerce. See the case of *Hanley* v. *Kansas City Railroad Company*, 187 U. S. 617; *Pacific Coast Steamship Company* v. *Railroad Commissioners*, 9 Saw. 253, 19 Fed. 10; See, also, *I. C. Railroad Company* v. *Rodgers & Hurdle*, 76 So. 686, in which the cases last above are referred to and approved by this court.

No brief for appellee found in record.

Etheridge, J., delivered the opinion of the court.

The appellee sued the appellant for failure to promptly deliver the following telegram filed with the company at Starkville, Miss., on October 1, 1920: "Betty died at 2:15 this morning. Will bury here." This telegram was delivered to the company on the morning of October 1st and reached Tupelo, Miss. at 11:20 a. m. the same day, there being no undue delay in the transmission and no question as to the correctness of the message as transmitted, but the telegram was not delivered to the plaintiff at Tupelo until the morning of October 3, 1920, when he received it through the mail.

The company pleaded in abatement that the government had taken over the telegraph system and was conducting

it as a governmental agency and that the company was not
responsible. There was a demurrer to the plea in abate-
ment, which was sustained, whereupon the company plead-
ed the general issue and gave notice under the general is-
sue that it would prove that the message in question was
received subject to delay on account of the general rush
of business at the time of filing of the message and other
messages having priority over the wires, and that after the
message was received at Tupelo the plaintiff was unknown
to the defendant's agent and that said message was turn-
ed over to a messenger for delivery, and the messenger was
unable to ascertain the whereabouts of the plaintiff, and
that, after making inquiry of various and sundry persons
and using various means to ascertain the whereabouts
of the plaintiff, the Tupelo office sent a service message to
the Starkville office for a better address, but was unable to
secure it, and then placed the message in the mail address-
ed to the plaintiff.

The defendant also filed special pleas that the message
was delivered to and accepted by the company subject to
the terms of the contract in writing which became a part
of the contract to transmit and deliver the message; that
it was a term and condition of said contract, and such mes-
sage was accepted by the defendant with the understand-
ing that the defendant should not be liable for mistake or
delay in the transmission and delivery or nondelivery of
any unrepeated message beyond the amount charged for
sending same; that said message was an unrepeated mes-
sage, and the defendant was not requested or directed to
repeat the same; and that it only received thirty-two cents
for the transmission of such message, which charge in-
cluded its delivery at destination.

It was also pleaded that the message was an interstate
message, in this, that in order to transmit the message
from Starkville to Tupelo it became and was necessary
for the defendant to transmit said message to its proper
relay station for the handling of messages which relay
station was the city of New Orleans, and that said message

was sent from Starkville, Miss., to New Orleans, La., the proper relay station between Starkville and Tupelo.

The defendant also pleaded the company had established rules and regulations for the transmission of messages, and that the same were in effect prior to June 18, 1910, and are still maintained and established, and that thereby messages are classified into "repeated" and "unrepeated" messages, and that in the case of an unrepeated message the defendant assumes no liability except for gross negligence beyond the amount received for sending the same, while in the case of repeated messages defendant does not undertake to limit its liability for the amount received for sending the same, but assumes, on the contrary, liability for not to exceed fifty times the amount received for the message except in so far as such liability may be further limited by other provisions of the contract, and that for the additional work of repeating messages and the additional risk of liability assumed in the case of repeated messages it charges an additional amount equal to one-half of the charge for an unrepeated message.

Defendant further pleaded that Congress had taken over and assumed full charge of the regulation of interstate communication by telegraph, and by so doing it removed from the field of state regulation or interference all interstate messages, and that its tariffs with the conditions and regulations of transmitting messages had been approved by the Interstate Commerce Commission; that the Interstate Commerce Commission prior to the filing of the message in suit, and prior to the commencement af this suit, had full knowledge of the rates, charges, and classifications established by the defendant, and thereby recognized the right of the defendant to charge a higher rate for a greater liability and a less rate for a less liability as above described, and by reason of which that the stipulation in the contract subject to which this message was accepted was reasonable, valid, and binding on the plaintiff herein, free from any regulation or control on the part of the state of Mississippi or any other state, and that by reason there-

of the defendant was not liable beyond the sum of thirty-two cents, the amount received for sending the message.

Defendant further pleaded that by reason of a stipulation in the contract it was not liable for the negligence of its servants in the transmission or delivery or nondelivery of messages, whether caused by negligence or otherwise beyond the sum of fifty dollars, at which amount the said message was valued by the sender thereof.

These special pleas were demurrd to and the demurrer sustained, and the cause proceeded to trial and resulted in a judgment for the plaintiff in the sum of five hundred dollars, from which judgment this appeal is prosecuted.

The cause was tried in the court below prior to the decision of the case of *Postal Telegraph-Cable Co.* v. *Warren-Godwin Lumber Co.,* 251 U. S. 27, 40 Sup. Ct. 69, 64 L. Ed. ——, in which decision the United States supreme court overruled this court in the cases of *Warren-Godwin Lumber Co.* v. *Postal Telegraph-Cable Co.,* 116 Miss. 660, 77 So. 601, and *Dickerson* v. *Western Union Telegraph Co.,* 114 Miss. 115, 74 So. 779, in which this court held that Congress had not occupied the field.

Under the decisions of the United States supreme court referred to, and in the recent case of *Western Union Telegraph Co.* v. *Speight,* 252 U. S. 576, 40 Sup. Ct. 344, 64 L. Ed. ——, decided October 25, 1920, the pleas presented a valid defense, and under the pleas the utmost recovery that could be allowed would be fifty dollars. Of course, the plaintiffs might take issue with the facts set forth in the pleas if they desire to do so.

For the errors indicated, the judgment will be reversed, and the cause remanded.

*Reversed and remanded.*