**WESTERN UNION TELEGRAPH CO. v. WOOD.** (No. 2345.)

(Court of Civil Appeals of Texas. Amarillo. June 4, 1924. Rehearing Denied July 2, 1924.)

1. **Pleading** ⊚⟳34(3)—General exception to answer held improperly sustained, where specific facts stated consistent with finding either for or against exceptant.

Court erred in sustaining general exception to sufficiency of answer of telegraph company, in action for failure to deliver message, to allege that message was one sent in interstate commerce, where specific facts stated aside from general conclusion might be consistent with finding either that telegram was or was not sent in interstate commerce.

2. **Commerce** ⊚⟳28—Sending telegram through another state to point in state may or may not be interstate commerce.

Whether transmission of telegram from point in state through another state to point in state is or is not interstate commerce is to be determined more by facts existing and in contemplation of parties at time of making contract for transmission than by what telegraph company without knowledge or consent of other party, may have subsequently done with reference to it.

3. **Commerce** ⊚⟳28—Facts held to create presumption that telegram between points in state through another state was intrastate commerce.

Where the usual and customary way of transmitting messages between two points in state is over lines wholly within state, it will be presumed that when message was delivered at one of such points for transmission to other point, though it was sent via another state, parties contracted with reference to intrastate transmission.

4. **Telegraphs and telephones** ⊚⟳65(6)—Testimony concerning notice of nondelivery of message held inadmissible without pleading.

Admission of testimony that no notice was given sending office and to sender that message had not been delivered by office at destination to addressee, without pleading of such fact as basis of recovery, was error.

5. **Trial** ⊚⟳412—Error in admission of evidence held not waived by cross-examination of witness.

Erroneous admission of testimony was not waived by cross-examination of witness as to the matter.

6. **Telegraphs and telephones** ⊚⟳37(1)—Duty to deliver telegram stated.

Ordinarily a telegraph company must deliver message to party in whose care it is sent, if delivery is not made to addressee in person.

Appeal from District Court, Donley County; R. L. Templeton, Judge.

Suit by W. H. Wood against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Francis R. Stark, of New York City, and A. A. Lumpkin, of Amarillo, for appellant.

W. A. McIntosh and Sam J. Hamilton, both of Memphis, for appellee.

BOYCE, J. W. H. Wood brought this suit against the telegraph company, to recover damages for failure of said company to deliver a telegraphic message sent from Mineola, Tex., to Hedley, Tex., addressed to him, care of Mrs. Hattie Cathey, announcing the serious illness of his sister. It was alleged

that the failure to receive the information contained in the message prevented the plaintiff from reaching the bedside of his sister before her death and the damages sought to be recovered are for mental anguish caused thereby. The appeal is from a judgment for plaintiff on verdict of the jury.

[1] The telegraph company alleged that the telegram—

"was an interstate one, originating at Mineola, Tex.. and being sent from there to Dallas, Tex., and there relayed to Oklahoma City, Okl., and from there to Amarillo, Tex., thence to the place of destination. And by reason of the fact that such message was an interstate one, no damages can be recovered by plaintiff as mental anguish is not an element of damages in an interstate message; that the defendant in sending and routing said message in the manner above mentioned did so for the purpose of expediting the transmission and delivery of said message promptly."

The court sustained an exception, in the nature of a general exception to its sufficiency in law, to this portion of the answer, and the first three propositions complain of this ruling.

If it be true that the allegation is sufficient to show that the "message was sent in interstate commerce," it would follow that the court was in error in sustaining the exception. Western Union Telegraph Co. v. Speight, 254 U. S. 17, 41 Sup. Ct. 11, 65 L. Ed. 104. The statement of facts in the answer, aside from the statement of the general conclusion that the message was an interstate one, is not sufficiently specific to enable us, holding the view we do as to the law of the case, to determine with certainty whether this pleading presents a good defense. The specific facts stated, aside from the general conclusion, might be consistent with the finding either that the telegram was or was not sent in interstate commerce —a conclusion as to which would depend on other facts not stated. In the absence of a special exception calling for a more specific statement, we are inclined to think, having regard to the rule of presumption in favor of the sufficiency of pleadings as against general demurrers, that the court should have overruled the exception and permitted a full development of the facts necessary to a determination of this question.

[2, 3] We must say, however, that we are not prepared to announce complete accord with appellant's contention as to the law of this phase of the case. The case was argued on the assumption that, as a matter of fact, the usual and customary course of transmission of messages from Mineola to Hedley did not take them out of the state, but it was urged that the fact that this particular message might have been handled in an unusual way, not in contemplation of the parties at the time of the delivery of the message at Mineola, would make no difference; that the mere fact that the message was sent through another state determined its character and settled the rights of the parties in reference thereto. We believe that the character of the contract, whether interstate or intrastate, as it affects the parties to it, is to be determined more by the facts existing and in contemplation of the parties and so entering into the contract at the time it was made than by what the telegraph company, without the knowledge or consent of the other parties affected thereby, may have subsequently done with reference to it. T. & N. O. Ry. Co. v. Sabine Tram Co., 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442; Railroad Commission v. Worthington, 225 U. S. 101, 32 Sup. Ct. 653, 56 L. Ed. 1004; Pennsylvania Railway Co. v. Clark Bros. Coal Mining Co., 238 U. S. 456, 35 Sup. Ct. 896, 59 L. Ed. 1406. It has been repeatedly said by the Supreme Court of the United States that the "essential character of the commerce" is the controlling fact in determining whether it is interstate. In the cases cited it was held that shipments were interstate, though they were shipped on local billings and contracts between points within the same state, where such transportation was merely the initial step "intended by the parties to be such" (Railway Co. v. Worthington, supra) in a continuous further transportation without the state. In the Sabine Tram Company Case the court said:

"That there must be continuity of movement we may conceive, and to a foreign destination intended at the time of the shipment."

In the same case it is also said:

"The essential character of the commerce, not its mere accidents, should determine."

Interstate messages are now subject to rates, rules, and regulations fixed by the Interstate Commerce Commission, which enter into the contract of the parties and determine their rights and liabilities. Western Union Telegraph Co. v. Esteve Bros. & Co., 256 U. S. 566, 41 Sup. Ct. 584, 65 L. Ed. 1094; Western Union Telegraph Co. v. Jacobs (Tex. Civ. App.) 245 S. W. 943. The contractual rights and liabilities of the parties may be very different on an interstate message from what they would be on an intrastate one, though the same form of contract might be used. If there should be two routes, one interstate and the other intrastate, between two points within a state, a different rate might possibly apply to the transmission of a message beween such points according to the route over which it was transmitted; in such case the parties certainly could expressly contract for transmission over either, and such a contract would fix their rights and liabilities. If the telegraph company should then, to suit its own purpose, transmit the message over the other route, could it be

reasonably contended that it could thereby escape responsibility as measured by the terms of the contract actually made? If a railway company, having a direct line between two points within a state, and lying wholly within it, enters into a contract for intrastate shipment between such points, could it, by carrying the goods over circuitous lines out of the state, change the character of the shipment as determined by the express provisions of the contract, and evade the responsibilities imposed upon it thereby? If there is a direct line between such points, and shipments are usually made in that way, should it not be presumed, in the absence of express provisions of the contract to the contrary, that such contract was made with reference to transportation in such way? Now, if it be true that the usual and customary way of transmitting messages from Mineola to Hedley was over lines wholly within this state, we should think that when a message was delivered at Mineola for transmission to Hedley it would be contemplated, in the absence of a contrary showing, that it was to be transmitted in the usual way; the presumption would be that the parties contracted with reference to an intrastate transmission, and that the telegraph company would not be permitted to change its liability by showing that it performed the service by transmission over an unusual route. In most of the cases we have consulted, where it was held that the transmission through a foreign state of a message between two points in the same state made the business "commerce among the several states," stress was placed upon the fact that it appeared from the evidence in the case that this method of transmission through foreign territory was the usual and customary way of handling the business between such points. Shannon v. Western Union Telegraph Co., 152 Ark. 358, 238 S. W. 59; Western Union Telegraph Co. v. Bushnell, 73 Ind. App. 511, 128 N. E. 49; Western Union Telegraph Co. v. Beasley, 205 Ala. 115, 87 South. 858; Western Union Telegraph Co. v. Throop, 75 Ind. App. 68, 129 N. E. 875; Western Union Telegraph Co. v. Barbour, 206 Ala. 129, 89 South. 299, 17 A. L. R. 103; Woodall v. Western Union Telegraph Co. (Ala. Sup.) 97 South. 881; Western Union Telegraph Co. v. Kaufman, 62 Okl. 160, 162 Pac. 708; Western Union Telegraph Co. v. Bolling, 120 Va. 413, 91 S. E. 154, Ann. Cas. 1918C, 1036; Western Union Telegraph Co. v. Halbert, 124 Miss. 214, 86 South. 760; Klippel v. Western Union Telegraph Co., 106 Kan. 6, 186 Pac. 993; Western Union Telegraph Co. v. Lee, 174 Ky. 210, 192 S. W. 70, Ann. Cas. 1918C, 1026.

The reason for giving any importance to such facts is evidently because it was thought that the character of the business was to be determined by the circumstances existing and in contemplation of the parties at the time of the making of the contract. Such were the facts in the Speight Case, relied on by appellant, and the Supreme Court in its opinion, goes into details to show that the message was transmitted according to an arrangement that had existed "for many years." It is true that some of the language in that opinion might furnish some ground for the contention here—that the very fact of the transmission through another state, sporadic and unexpected though it may have been, would give character to the transaction and control the rights of the parties. Such was the interpretation put upon the holding by the Supreme Court of South Carolina in the case of Son v. Western Union Telegraph Co., 207 Mo. 540, 106 S. W. 507. See, also, Taylor v. Western Union Telegraph Co. (Mo. App.) 204 S. W. 818. But when the Speight Case is considered in connection with other decisions of the same court, some of which we have cited, and the authorities cited by the court to sustain the holding, we are not prepared to conclude that the decision is binding authority to the full extent of appellant's contention.

The opinion in the Speight Case cites as authority two former decisions of the same court. Hanley v. Kansas City Southern Ry. Co., 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333; Kirmeyer v. Kansas, 236 U. S. 568, 35 Sup. Ct. 419, 59 L. Ed. 721. In the first case the Railway Commissioners of Arkansas had attempted to enforce rates fixed by them on shipments over the Kansas City Southern Railway Company between Ft. Smith and Grannis, Ark. The railway company's line between these two points ran for a distance of 52 miles in Kansas and 64 miles in the Indian Territory. It was held that the business over such line between the points named was interstate commerce. This decision is not, in any way we think, inconsistent with the conclusions we have reached here. The movement of the traffic in that case must of necessity have traversed the foreign jurisdiction—its essential character was interstate, both in contemplation and in fact. In the other case cited a resident of Kansas, in order to evade the Kansas prohibitory laws, moved his place of business into Missouri and did business in that state, taking orders from Kansas and filling them by delivery of goods from his place of business in Missouri, and it was held that such business was interstate, and that the motive of moving into Missouri had nothing to do with the fixing of the character of the transaction. The decision is not, we think, controlling here. The defendant in that case had the legal right to set up his business in Missouri and transact business from that place; the motive that controlled him in doing this could not affect the character of subsequent business. In this case the rights and liabilities of the parties originated in a contract which, under the facts, we have supposed was im-

pliedly in reference to intrastate business. The telegraph company would have no right, we think, to arbitrarily change the character of the business so as to affect the rights of the other party under the contract which it had made with him.

[4, 5] The admission of testimony that no notice was given the sending office and to the sender that the message had not been delivered by the Hedley office to the addressee, without pleading of such fact as a basis of recovery, was, we think, error. In the case of Western Union Telegraph Co. v. Hicks (Tex. Civ. App.) 253 S. W. 568, relied on by appellee to sustain the admission of this evidence, it appears that there was pleading of such matter. The defendant, by cross-examining the witness as to such matter, did not waive the objection. Cathey v. M., K. & T. Ry. Co., 104 Tex. 39, 133 S. W. 417 (2), 133 L. R. A. (N. S.) 103; G., H. & S. A. Ry. Co. v. Kellogg (Tex. Civ. App.) 172 S. W. 181 (2); Bell v. Swim (Mo. Sup.) 178 S. W. 853; Dallas Hotel Co. v. Fox (Tex. Civ. App.) 196 S. W. 654 (7).

The evidence referred to in the fifth proposition was, we think, admissible. Western Union Telegraph Co. v. Lydon (Tex. Sup.) 18 S. W 701; Western Union Telegraph Co. v. Gresham (Tex. Civ. App.) 223 S. W. 1055 (5).

[6] The message was addressed to W. H. Wood, in care of Mrs. Hattie Cathey. The plaintiff, at the time the message was received at Hedley, was at Memphis, Tex., some 15 miles from Hedley. The plaintiff alleged that if the message had been delivered to Mrs. Hattie Cathey she would have delivered it to him. The court submitted two issues as to delivery—one whether the agent at Hedley used ordinary care to deliver the message to Mrs. Hattie Cathey, and the other as to whether ordinary care was used to deliver to plaintiff. The jury returned negative answers to each of these. It is insisted that the evidence shows that the message was addressed to Mrs. Hattie Cathey, not for the purpose of delivery to the plaintiff but merely for the purpose of locating the plaintiff so that there might be personal delivery to him, that there was no duty of delivery to Mrs. Cathey, and, since plaintiff was not at Hedley, no duty of delivery to him. This contention, thus generally stated, is made the basis of several propositions, complaining of error in the submission of the case to the jury. Ordinarily the telegraph company may deliver, and it is its duty to do so if delivery is not made to the addressee in person, the message to the party in whose care it is sent. Western Union Telegraph Co. v. Young (Tex. Sup.) 13 S. W. 985; Western Union Telegraph Co. v. Oakley (Tex. Civ. App.) 181 S. W. 509. We have read the evidence which appellant says shows that this message was sent under a "special contract," which would preclude delivery to Mrs. Cathey. We do not think it necessarily has this effect. The jury found that the telegram was sent "in care of Mrs. Hattie Cathey, in order that she would receive same and then transmit and deliver it to the addressee." There was no necessity for submission of the issue of delivery to plaintiff, but the answer to the other issue was a sufficient finding of negligence to warrant the judgment, and the submission of the issue as to delivery to plaintiff in person, if that is what the issue meant, was harmless. We therefore overrule the sixth, seventh, and ninth propositions.

We are of the opinion that the evidence is sufficient to sustain a finding that, if the message had been delivered to Mrs. Hattie Cathey, it would in turn have been delivered by her to the plaintiff, in time for him to have reached the bedside of his sister before her death.

We find no error in the manner of the submission of the fourth issue as presented in the eighth proposition.

Since we reverse the case on the other grounds, we need not discuss the proposition which asserts that the judgment is excessive.

Reversed and remanded.