ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. A. S. ACKER.

Decided December 22, 1906.

**1.—Personal Injuries—Diminished Capacity to Labor—Evidence—Charge.**

In a suit for personal injuries the court charged the jury, in substance, that they should find for the plaintiff for his loss or injury, if any, from inability or diminished ability to labor and earn money by reason and as a result of the negligence of the defendant. The only evidence of the business or earning capacity of the plaintiff before the injury was that he was a tomato grower or farmer; nothing was shown as to the extent of his business or earnings. Held, there being no evidence from which the jury could ascertain with any degree of certainty the damage, if any, sustained by the plaintiff by reason of his diminished capacity to labor and earn money, that element of damage should not have been submitted to the jury. To enable a jury to determine this fact intelligently there must be some evidence of the nature and extent of the plaintiff's business or of his earnings before the injury.

**2.—Same.**

Houston & T. C. Ry. Co. v. Bird (48 S. W. Rep., 756) followed. Texarkana & Ft. S. Ry. Co. v. Toliver (84 S. W. Rep., 377), and International & G. N. Ry. Co. v. Edwards (91 S. W. Rep., 641) distinguished.

Appeal from the District Court of Cherokee County. Tried below before Hon. James I. Perkins.

*E. B. Perkins, Marsh & McIlwaine* and *J. S. McIlwaine,* for appellant.—In the absence of evidence from which the jury could properly ascertain the amount of appellee's loss on account of any diminished capacity to "labor and earn money," the court erred in submitting such element of damages to the jury. St. Louis S. W. Ry. v. Smith, 86 S. W. Rep., 943; Houston & T. C. Ry. v. Bird, 48 S. W. Rep., 756; St. Louis S. W. Ry. v. Johnson, 85 S. W. Rep., 476; International & G. N. Ry. v. Branch, 56 S. W. Rep., 542; International & G. N. Ry. v. Simcock, 81 Texas, 503; Galveston, H. & S. A. Ry. v. Thornsberry, 17 S. W. Rep., 521.

*John C. Box* and *Wilson & Watkins,* for appellee.—In support of the court's charge, cited: International & G. N. Ry. Co. v. Edwards, 91 S. W. Rep., 641; Missouri, K. & T. Ry. Co. v. Vance, 41 S. W. Rep., 170; Fordyce v. Withers, 20 S. W. Rep., 768; Texarkana & Ft. S. Ry. Co. v. Toliver, 84 S. W. Rep., 377; Missouri, K. & T. Ry. Co. v. Johnson, 37 S. W. Rep., 775.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was brought by appellee against appellant to recover damages for personal injuries alleged to have been caused by the negligence of appellant's employes.

The evidence shows that appellee, at the request of the conductor of a train on appellant's road, got into a freight car which was partially filled with crates containing tomatoes, for the purpose of building said crates in position while the car was being switched in the making up of the train. While thus engaged the operatives of the train cut the car loose from the engine and "kicked" it on to a switch track where it collided with other cars standing on said track with such force and

violence as to throw plaintiff down upon the floor of the car and precipitate upon him the crates of tomatoes which were piled up in the end of the car and which plaintiff was holding in position.

The injuries thus received by plaintiff, as detailed by his physician and himself, are as follows: His physician testified: "He (plaintiff) had several cuts and bruises and contused wounds and dirt was all in them and he had a cut over the left ear about 1¼ inches long through the skin, and the right eye had a contused or punctured wound just in the lash, and the whole side of his face was black and blood shot, under his eye was more so, it was swollen quite a good deal at the time, and he had an injury to his right elbow, and he had three bruises on one leg and one on the other, and had a bruise—I believe it was on his left shin. I believe that was about the extent of his injuries. He had fallen on his elbow and it was in relaxed condition, it was a punctured wound that partly severed the triceps muscles from the original and made a punctured wound at the elbow; it was in the elbow joint; if the arm had been extended, of course it would have been back of the elbow, but being flexed it was right over the joint. It didn't open the joint but was deep into the tissue of the tendon, or triceps muscle. The muscle I mentioned is the large muscle near the back part of the arm. . . . The puncture was through the inner end of the triceps muscle or leader, it reaches down and inserts into the bony part of the lower arm and it laps over the elbow joint and makes the hinge. His arm below the elbow was also injured. The treatment of the elbow and the experience I had with it demonstrated the correctness of the opinion I formed when I first examined the wound—only when I first went to him I thought the bone was broken off, but it was not; the back part of the ulna, or this bone that makes the hinge over the bone and makes the elbow joint, I thought it was broke, but it was not. I first bandaged his arm in a flexed condition in order to keep the muscles in front from drawing it out of shape and to bring the ends of the broken bones end to end, but this muscle being cut pulled it in so I was forced the next day to let the arm down. . . . I have examined the plaintiff from time to time since. I kept close watch on him for about a month and after that from time to time I kept watch on it. I don't think the arm has recovered its normal strength, but it has been a general improvement. Some day his arm will be all right. I think it will be a year at least until his arm is all right. I have seen Mr. Acker with the boils and have opened a few of them. I would judge these abcesses are caused from bruised tissues. I think these boils were cause from the bruises on his shin, eye, leg, etc., caused bad blood and the tissues became infected and that caused at least the first crop of boils and the first crop reinfected for the second crop. There might always be some little defect about his arm."

Plaintiff testified: "I suffered from my head and elbow and legs hurting me. I have suffered since that time. My head seems sore more or less yet. The back of my head pains me some. I don't know whether any of the crates fell on the back of my head or not. . . . It has been four, five or six months since the accident. I have not done much of anything since that time, because I have not been able. My arm has

kept me from some work that I could have done and I have had some boils that has kept me from work. I don't know how many boils I have had, but between 25 and 50. Most of the boils have been on the back of my neck and some up in the edge of my hair, and one or two on my face, and one or two on my leg, and one on my right arm below the elbow. . . . I have tried to work some since the injury. I undertook to haul some rock to build a cellar and my arm gave down on me and I had to quit. My right arm gave down on me. That is the same elbow that was injured. That elbow has bothered me more or less since the injury, especially about hitting it. If I hit it against anything it seems like it deadens it. I am not talking about what we call the 'funny bone.' If I strike my elbow against anything it hurts. I can work that elbow all right. I couldn't say I have the same free use of it as I have of the other. I can't work it quick without hurting it. When I undertook to haul these rocks my arm got sore and stiff to the extent that I had to quit that work. I suppose I gathered corn four or five days since the injury. Gathering corn hurts my arm more or less, but not as bad as lifting with it. I suppose it was a month and a half or two months after the injury when I tried to haul the rock. That difficulty I have with my arm is not an occasional matter, but I feel it all the time. . . . When I try to work with that arm it gets sore and stiff and aches. I don't think it is as strong as my left arm. My left elbow does not get that way. I didn't have that trouble before the injury. I was mistaken this morning when I said I had not had any of those boils lately. I have one coming on my right leg now."

Plaintiff also testified that several tiers of crates of tomatoes piled one upon another fell upon him and that the weight of each crate was from 22 to 27 pounds, and in this connection stated that he was a tomato grower. He further stated that before he received these injuries he was an active man, "and not a man of leisure. I farmed. I worked myself. I worked regularly."

The trial court gave the jury the following instruction as to the elements of damage to be considered by them in event they found for the plaintiff:

"If you find for the plaintiff the measure of his damages, which you should find and state in your verdict, would be such sum of money allowed now as you believe from the evidence will be a just and reasonable compensation to him for the bodily pain and mental anguish, if any, or either, he has suffered or has or will suffer, and for his loss or injury, if any, expressed in dollars, from inability, or diminished ability, to labor and earn money or its equivalent, by reason and as a result of the negligence of defendant, such as is above mentioned."

The verdict was a general one in favor of plaintiff in the sum of $1,000.

Appellant assigns error on this charge on the ground that there was no evidence from which the jury could ascertain with any degree of certainty the damage, if any, sustained by plaintiff by reason of his diminished capacity "to labor and earn money" and therefore that element of damage should not have been submitted to the jury. In the case of Houston & T. C. Ry. Co. v. Bird, 48 S. W. Rep., 756, this court held, in an opinion by Justice Williams, that evidence that the plaintiff was a school teacher and that prior to her injury she had made her liv-

ing and had assisted her father to take care of his family was not sufficient evidence of her earning capacity to authorize the court to submit the diminution of such capacity to the jury as an element of damage. We quote the following from that opinion which seems to us conclusive of the question before us:

"But the objection urged to the submission of lessened earning capacity is, in our opinion, well made. There was, it is true, evidence tending to show that there may have been a diminution of such capacity, but no proof of the facts essential to enable the jury to reach an intelligent conclusion as to the amount of loss resulting, or to base their verdict on this point upon anything but a mere guess. In the first place, there was no evidence as to plaintiff's previous avocation. The physician testified that he had heard her complain of her inability to follow her vocation of teacher, but no one stated that she had ever taught. If it were admitted that this is enough to show that she had been a teacher, there is nothing to show what was her earning capacity as such. The doctor further stated that she had previously made her own living, and had assisted her father to take care of his family, but as to what were the circumstances and mode of living of herself and father, the character of the latter's family, and the extent and value of the services rendered by her to him, the evidence is wholly silent, and no circumstances are proven from which the jury could infer the value of the living which she had made for herself, or of the services which she was able to render. While a large discretion is allowed the jury in fixing damages of such a character, their verdict is not supposed to be a mere conjecture, but an intelligent judgment, based upon proof laid before them of facts from which their conclusion is to be drawn. The plaintiff, in establishing such damages, is not required to prove amount, but is required to prove facts from which the jury can determine the proper amounts. (Gulf, C. & S. F. Ry. Co. v. Greenlee, 62 Texas, 351; International & G. N. Ry. Co. v. Simcock, 81 Texas, 502.)"

All that the evidence discloses as to the earning capacity of plaintiff is that he was a tomato grower and farmer. Whether he cultivated a fraction of an acre or many acres or was a tenant farmer or possessed and cultivated a farm of his own is not shown and no circumstances are proven from which the jury could estimate what his earning capacity was before his injury and therefore they were without any basis upon which to measure the damages caused by the impairment of such capacity. The recent case of St. Louis S. W. Ry. Co. v. Smith, 86 S. W. Rep., 943, follows the rule announced in the Bird case, supra.

The present case is distinguishable from the case of Texarkana & Ft. S. Ry. Co. v. Toliver, 84 S. W. Rep., 377. In that case the earning capacity of the plaintiff before his injury was definitely shown by the evidence, but it was not shown by any direct evidence what he could earn after his injury; and this court held that his earnings before the injury having been shown and the character and extent of his injuries being such as to greatly impair his ability to labor in any avocation that evidence showing what his present earnings were was not required to enable the jury to determine what compensation should be allowed for his decreased capacity to earn money, but that the amount of such compensation could be determined by the jury from their common knowledge

and experience. In the present case there was no evidence to show what the plaintiff's earning capacity was before the injury and any amount which the jury might fix as compensation for the diminution of that capacity would be purely speculative. In cases in which it is impossible to show definitely what the earning capacity of the injured person is no such proof would be required, but it is encumbent upon plaintiff seeking to recover damages of this kind to show the nature and character of his business or employment with that degree of certainty of which the case is susceptible, and this is not done by the evidence in the instant case. We think the case of International & G. N. Ry. Co. v. Edwards, 91 S. W. Rep., 641, may be distinguished from the case before us upon the ground that the evidence in that case discloses that while the plaintiff's earnings could not be definitely shown, the nature and character of his business was fully shown. Unless the case can be distinguished on this ground we can not assent to the soundness of the rule therein announced.

We have considered all of the remaining assignments of error presented in appellant's brief and none of them in our opinion is meritorious.

Because of the error in the charge of the court above discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*