## SOUTH PLAINS COACHES, Inc., v. BEHRINGER.

### No. 3480.

Court of Civil Appeals of Texas. Amarillo. Nov. 12, 1930.

Rehearing Denied Dec. 3, 1930.

Lockhart, Garrard & Brown, of Lubbock, and John H. Awtry, of Dallas, for appellant.

Vickers & Campbell and W. F. Schenck, all of Lubbock, for appellee.

HALL, C. J.

The judgment in this case was reversed upon the former appeal [(Tex. Civ. App.) 4 S.W.(2d) 1003; (Tex. Com. App.) 13 S.W.(2d) 334], after which the appellee Behringer filed his amended original petition seeking to recover damages for personal injuries in the sum of $10,000.

At the time of the accident, appellee was going from Lubbock to Sweetwater as a passenger on one of appellant's coaches. While traveling south on the highway, the coach and a Chevrolet car driven by a negro, who was traveling north, collided, resulting in the injuries described in the appellee's pleadings.

960

The collision occurred just about dark at a point on the highway where some person had parked two wagons on the east side of the highway. The wagons were tied together so that one formed a trailer to the other. It is shown that the driver of the bus going south was passing these parked wagons, and the car driven by a negro traveling north swerved from behind the wagons toward the center of the highway, resulting in a head on collision.

For a further statement of the issues and the evidence, we refer to the report of the case on the former appeal.

Based upon findings by the jury, the court rendered a judgment against appellant in the sum of $2,500, and refused to credit that sum with $150 which it was shown appellant had paid toward medical bills and hospital expenses.

The first proposition is based upon the failure of the court to enter a judgment in favor of appellant upon the finding by the jury to the effect that, at the time Behringer signed a release and assignment of his right to damages, no fraud was practiced upon him by the appellant's agents in order to procure his signature.

The jury found that, at the time Behringer signed the release and assignment introduced in evidence, he was mentally incapable of understanding the nature or effect of the instrument signed. While the jury might have answered this issue either in the affirmative or negative, the affirmative answer is supported by sufficient testimony, and the first proposition is overruled.

■■ During the trial, the court permitted the plaintiff to file a trial amendment alleging, in substance, that, as a result of his injuries, Behringer was disabled from work for a period of more than sixty days following the collision; that, on account of his injuries, his earning power had been diminished to such an extent that he could not now do the mental and physical labor that he could before his injuries; that such injuries afflicted him as alleged in his amended petition and impaired his mental and physical ability to labor and earn money at least one-half.

The appellant objected to the filing of the trial amendment because it operated as a surprise and because defendant never had any notice that plaintiff was claiming or would claim that his capacity to labor and earn money in the future had been in any manner diminished, and because it was impossible for appellant at that time to meet the allegations and proof, and for the further reason that the trial amendment set up a new cause of action which they were not prepared to contest.

The court overruled the objections, and the matter is presented here by a bill of exception.

The appellant then filed a motion for a continuance on the ground of surprise, setting up the same matters urged in its objection to the trial amendment. The court overruled the motion and ordered the trial to proceed. The appellant had alleged in his amended original pleading that his injuries were serious and permanent; that they had impaired his health and strength and tended to shorten his life. It is further alleged that, as a result of the injuries, his mind was affected, his skull was fractured, and his nervous system impaired. Under these allegations the appellee was entitled to introduce proof tending to show the impairment of his earning capacity. Texas, etc., Ry. Co. v. Elliott (Tex. Civ. App.) 189 S. W. 737; St. L. S. W. Ry. Co. v. Garber, 51 Tex. Civ. App. 70, 111 S. W. 227; Galveston, etc., Ry. Co. v. Parish (Tex. Civ. App.) 93 S. W. 682. This being the rule, it was not necessary for the appellee to file the trial amendment complained of. The proof was admissible under the allegations of his amended original petition. The trial amendment, therefore, was not such a surprise as entitled appellant to a continuance, and the error, if any, is harmless.

■ The next contention to be considered is that the evidence is insufficient to warrant the court in submitting special issue No. 14, in which the court inquired as to the amount of damages appellee had sustained by reason of his injury and authorized the jury to consider his diminished earning capacity in the future.

We cannot sustain the contention as urged in the proposition that there was no evidence in support of the allegations in the trial amendment that appellee's earning capacity had been diminished, but we are convinced that the evidence upon this issue is insufficient to enable the jury to form an intelligent judgment with reference to the amount of damages sustained by him, even if his earning capacity has been diminished, though there is testimony tending to show that his ability to do hard work on the farm has been impaired to an uncertain extent.

The appellee testified that he had been a farmer practically all his life before he went into the mercantile business at Wolforth, was 40 years old at the time of the trial and a little past 36 years of age when he was injured in 1926; that he lived at Wolforth three and a half years and moved from there to O'Donnell, where he conducted a café one or two months, and from O'Donnell went to Lamesa for a month or two, and then moved to a farm, where he had been farming ever since; that he was a tenant farmer, but he did not testify with reference to his income as a farmer, either before or after he was injured. With reference to his ability to labor continuously, it may be inferred that he was partially disabled at times by

attacks of headache which he and two physicians attributed to his injuries. He stated that these attacks of headache interfered with sleep, made him nervous, required him to take aspirin and rub his head with camphor; that he had had three attacks in one month that would last as long as two days, and occasionally had an attack that would continue for a week; that he had had three attacks which lasted a month each time; that the injuries had affected his right eye; that his health was reasonably good except the injuries to his head; that, if he got the least bit hot at work, a headache resulted and he had to rest until he cooled off, and stooping over tended to bring on an attack; that, when he got real hot and his head would commence to ache, he would rest a while and then go back to work, but would not work as fast on that account as before the injury. His wife testified that he had the headache pretty often, and then sometimes he would be all right and free from that trouble for a month; that occasionally the spells would last all night or two or three days, during which time he would take aspirin tablets and rub his head with camphor; that she had seen him take as many as half a dozen tablets in two hours, and that during the last eighteen months the headaches had been more frequent than before; that he had not been treated by a doctor for that trouble since his marriage in 1926, and had never had to call on a physician to prescribe for him; that he does not sleep very much when he has spells of headache.

No mortality tables were introduced, although they are admissible in cases where it is shown that the capacity of the party injured to earn money is partially diminished, though permanently injured. Gulf, C. & S. F. Ry. Co. v. Mangham, 95 Tex. 413, 67 S. W. 765; Missouri, K. & T. Ry. Co. v. Scarborough, 29 Tex. Civ. App. 194, 68 S. W. 196.

It will thus be seen that no data whatever has been furnished the jury showing to what extent his capacity to earn money has been diminished. He does not say what he was capable of earning as a farmer prior to his injuries, nor is there any testimony to enlighten the jury as to his earnings as a tenant farmer since he was injured.

■ As stated by Judge Pleasants in St. Louis S. W. Ry. Co. v. Acker, 44 Tex. Civ. App. 560, 99 S. W. 121, 122: "While a large discretion is allowed the jury in fixing damages of such a character, their verdict is not supposed to be a mere conjecture, but an intelligent judgment, based upon proof laid before them of facts from which their conclusion is to be drawn. The plaintiff, in establishing such damages, is not required to prove amount, but is required to prove facts from which the jury can determine the proper amounts. [Gulf, C. & S. F.] Railway Co. v. Greenlee, 62 Tex. 351; [International & G. N.] Railway Co. v. Simcock, 81 Tex. 503, 17 S. W. 47."

As is further said in that case: "All that the evidence discloses as to the earning capacity of plaintiff is that he was a tomato grower and farmer. Whether he cultivated a fraction of an acre or many acres, or was a tenant farmer, or possessed and cultivated a farm of his own, is not shown, and no circumstances are proven from which the jury could estimate what his earning capacity was before his injury, and therefore they were without any basis upon which to measure the damages caused by the impairment of such capacity" —citing St. Louis Southwestern Ry. Co. v. Smith, 38 Tex. Civ. App. 507, 86 S. W. 943, 946, and Houston & T. C. Ry. Co. v. Bird (Tex. Civ. App.) 48 S. W. 756.

While the appellee did testify that he was a tenant farmer, he did not show the extent of his operations before the injuries nor to what extent his ability to manage and conduct a farm with hired hands has been impaired.

In the Greenlee Case, supra, the Supreme Court said: "In this character of case every particular and phase of the injury ought to enter into the consideration of the jury. Such as whether the injury is permanent or transitory; its effect upon the physical system; whether in its nature calculated to produce death or grave apprehensions of death; loss of time; diminished ability to earn money by the usual avocation of the party. * * * In support of each of these elements evidence is admissible, and it is incumbent upon the party seeking redress, so far as the nature of the case admits and within reasonable limits, to fully enlighten the jury by evidence as to each element of damage claimed."

This capacity to earn money involves an inquiry into the value of appellee's labor, physical or intellectual, before he was injured, and his ability to earn money by labor, either physical or intellectual, thereafter.

In 17 C. J. 896, it is said: "There is no distinction between loss of earnings and loss of time as to the necessity of proof of their value. In either case such proof is ordinarily essential to support a recovery but where a plaintiff is engaged in such a business that there is no rule by which the value of the time lost from it may be well ascertained, the jury may, in their discretion, from all of the facts before them award an amount sufficient as reasonable compensation for time lost and a similar rule, it seems, will apply in a case where plaintiff loses time as a result of his injuries but is unable to prove its value because he was not at the time of the injury engaged in any service or business."

In cases where the complaining party is a mother or housewife who is not compensated in a pecuniary way for her services, the liber-

al rule which permits the jury in their discretion to fix the amount has been frequently applied in Texas. St. Louis S. W. Ry. Co. v. Niblack, 53 Tex. Civ. App. 619, 117 S. W. 188; Dallas Consolidated Electric Street Ry. Co. v. Motwiller, 101 Tex. 515, 109 S. W. 918; Thomas v. Pugh (Tex. Civ. App.) 6 S.W.(2d) 202; Texas & P. Ry. Co. v. Perkins (Tex. Civ. App.) 284 S. W. 683.

This rule is further expressed in 17 C. J. 900, as follows: "Evidence from which the amount may be determined is essential to an award for impairment or destruction of earning capacity. An award can not be made from mere conjecture or without proper data furnished as evidence, although the evidence need not be clear and indubitable to entitle it to go to the jury and the law exacts only the kind of proof of which the fact to be proved is susceptible."

The appellee's testimony shows that he had been a farmer practically all his life; that he farmed both before and after the accident for which he seeks to recover damages and as a result of which he insists his earning capacity has been diminished. While the amount earned by the complaining party, both before and after, may not be taken for the purpose of fixing the measure of recovery, such testimony is necessary to establish in some degree the extent of impairment.

In the Simcock Case, supra, where the plaintiff sought to recover for loss of time, the court said: "We have scrutinized the record, and, while we find evidence showing loss of time in a vague and an indefinite manner, we fail to detect any evidence whatever of the value of the time lost, or of any amount whatever of damages incident thereto."

In the case of Houston & T. C. Ry. Co. v. Bird, supra, the court said: "But the objection urged to the submission of lessened earning capacity is, in our opinion, well made. There was, it is true, evidence tending to show that there may have been a diminution of such capacity, but no proof of the facts essential to enable the jury to reach an intelligent conclusion as to the amount of the loss resulting, or to base their verdict on this point upon anything but a mere guess."

In St. Louis, S. W. Ry. Co. v. Smith, supra, the court said: "Although the plaintiff is not required to prove the amount, he is required to prove facts from which the jury can determine intelligently the amount, that will fairly compensate him for the loss sustained. The mere proof of previous avocation and the character of his injuries will not suffice."

The capacity of a housewife to earn money in the performance of her daily routine of duties is difficult of valuation by a money standard, but a farmer whose living depends upon his labor, the crops produced thereby, and the income realized from the sale or use thereof, are matters susceptible of proof, and none whatever was introduced in this case. The case, therefore, does not come within the rule sometimes announced, that the amount should have been left to the sound judgment and experience of the jury, nor does it belong to that class of cases where the complaining party has lost a finger, a foot, or one of his limbs, and, from the very nature of his injuries, the jury may be allowed to exercise their judgment with reference to the extent of impairment of his earning capacity after having been acquainted with his business ability and his avocation. Gulf, C. & S. F. Ry. Co. v. Gordon, 70 Tex. 80, 7 S. W. 695; Panhandle & S. F. Ry. Co. v. Reed (Tex. Civ. App.) 273 S. W. 611; 8 R. C. L. 652, 653, § 195.

■■ By the sixth and seventh propositions the appellant attacks the court's charge upon proximate cause. The paragraph of the charge is as follows: "Proximate cause as that term is used in this charge means the efficient and moving cause without which the injury in question would not have occurred. That is, an act becomes the proximate cause of an injury whenever such injury is the natural and probable consequence of the act in question and ought to have been foreseen in the light of attendant circumstances."

The appellant insists that this definition is insufficient because it omits the element of a new and independent cause which the evidence shows intervened, and further because it fails to apply the standard of ordinary care and prudence to the "element of forseeableness" on the part of appellant's driver.

The facts are that appellant's bus was going south on the state highway, and, at the time of the accident, which was between sunset and dark, was traveling, according to the testimony of appellant's chauffeur, at about 30 miles per hour. The traveled part of the road at that point was 24 feet in width. The two wagons, one behind the other, were parked on the east side of the road or to the left of the bus. Just as the bus was passing the wagons, a Chevrolet automobile driven by the negro Miller was traveling north, and, according to the negro's testimony, he failed to see the wagons until he was in a few feet of them. Upon seeing the wagons, the negro did not stop his car, but swerved suddenly to his left, and collided with the bus, damaging the control appliances so that appellant's chauffeur could not control the direction in which the bus was going, with the result that the bus ran into the ditch on the east side of the road. The negro Miller testified that he was traveling about 25 miles an hour; that the lights of his car were very dim; that the lights of the bus blinded him; that, as soon as he saw the wagons parked on the east side of the road, he reached for his emergency brake and pushed the foot brake; that his car had no bumper, and that, in his effort to

stop, he collided with the bus; that he was in 15 or 20 feet of the wagons before he saw them; that he did not know which side of the road he was on after he saw the wagons because he was reaching for his emergency brake, and that he guessed he lost his head right then and thought he was going to be killed and did not know much about what he did at that time. The appellant's chauffeur, McMaken, testified that he was going south, and was on the west side of the highway, and could see the parked wagons some three or four hundred yards before he reached them; that he also saw the car coming north, and he could see that the driver of the car was slowing down; that the witness blinked his lights, and, when he got even with the wagons, saw that there were two of them, and that the car was in behind the wagons. He testified that he thought the negro had stopped, as he had not seen him for some 50 feet, but, just as he reached the hind wheels of the rear wagon, the negro came out from behind the wagon and hit the bus immediately behind its front wheels; that the impact tore the front wheel loose from all of its hangings and caused it to drop back under the crank case and jammed the front wheel brakes so he could neither turn nor stop the bus.

The appellant objected to the court's definition of proximate cause, and tendered its specially requested charge No. 2, which, if given, would have corrected the errors complained of in the definition submitted by the court. We think, under the facts, the court erred in the definition given and in refusing to submit the special charge which defined proximate cause as one "which, in the natural and continuous sequence, unbroken by a new independent cause, produces an event, and without which the event would not have occurred," and further defines it as an act or omission such as that a person of ordinary care and prudence would anticipate that the injury complained of or a similar injury might possibly result therefrom. We think this contention must be sustained. Dallas Railway Co. v. Alexander (Tex. Civ. App.) 23 S.W.(2d) 512, 513.

In Blanch v. Villiva (Tex. Civ. App.) 22 S.W. (2d) 490, 491, the Beaumont court quotes from the opinion of the Chief Justice of that court in Linn Motor Co. v. Wilson, 14 S.W. (2d) 867, a definition of proximate cause applicable to cases like the one before us and, with reference to the element of foreseeableness, as follows: "And from which it ought to have been foreseen or reasonably anticipated by the defendant in the exercise of ordinary care, that the injury complained of or some similar one would result naturally and probably in the light of attending circumstances."

See, also, Galveston, H. & S. A. Railway Co. v. Washington, 94 Tex. 510, 63 S.W. 534.

■The fact that appellant's driver was running the bus at the time of the accident in excess of 15 miles per hour in violation of the criminal statutes does not affect the question. In San Antonio & A. P. Ry. Co. v. Behne (Tex. Com. App.) 231 S.W. 354, 355, it is said: "The holding of the Court of Civil Appeals is to the effect that the statute, noncompliance with which is the basis of the suit, was enacted for the protection of persons, as well as property, and that its violation constituted a wrongful act as a matter of law and imposed liability for any injury which could be traced to such unlawful act, regardless of whether the injury were one of a kind or nature which might have been foreseen or anticipated. As we construe the opinion of the Court of Civil Appeals, a distinction is drawn between an act which is wrongful or negligent per se, as in violation of statute, and one which results from a failure to exercise ordinary care, in so far as the doctrine of anticipation of injury, as applied to proximate cause, is concerned. The conclusion thus reached is not in accord with the holdings of our Supreme Court. * * * When it has been once determined that the act or omission complained of is wrongful or negligent, whether as a result of failure to observe a statutory or common-law duty, liability, in either case, is limited to proximately caused injuries. And the rules for determining proximate cause are the same in either case."

In Waterman Lumber Co. v. Beatty, 110 Tex. 225, 218 S. W. 363, 364, the Supreme Court said: "There is no doubt that it is essential to the maintenance of an action for damages for a personal injury, founded on the violation of a statute, to establish, not only a violation of the statute, but that the violation was the proximate cause of the injury. * * * It follows that there was the same necessity for a proper application of the thoroughly settled law of proximate cause in this case as in the ordinary negligence case involving no violation of a statute."

■ By the eighth proposition, the appellant insists that the court erred in defining unavoidable accident. The brief fails to inform us that there is any testimony whatever introduced tending to show an inevitable accident. A finding by the jury to the effect that the injuries complained of were the result of such an accident would have been in conflict with the three findings charging each of the three parties concerned with negligence. There being no evidence of inevitable accident, the error of the court, if any, in defining it, is harmless.

■ By several propositions, the appellant insists that the court erred in refusing to submit special issues inquiring whether the negro Miller gave any warning of his intention to turn to the left around the wagons, whether he suddenly turned his car to the left and collided with the bus, and whether such acts constitute negligence, and, if so, whether they

were the proximate cause or contributing proximate cause of the injury.

The evidence having shown that the negro's car struck the appellant's bus near the left front wheel of the bus, appellant was entitled to have a finding by the jury based upon such testimony. If the court had correctly defined proximate cause, then a separate finding relating to an intervening independent cause would have been unnecessary. What we have said in discussing the error of the court in defining proximate cause sufficiently disposes of these propositions, as well as other propositions relating to the error in the definition of a proximate cause in so far as it fails to present the issue whether the accident could reasonably have been anticipated by a man of ordinary prudence.

■ The last contention is that the court should have credited the amount of the judgment against appellant with the sum of $150, which had been paid by appellant upon appellee's hospital fees. It does not appear from appellant's brief that the pleading and proof are sufficiently specific to entitle it to such credit. There is neither allegation nor proof showing how much of said sum was paid to physicians, how much for hospital fees, medicines, or other specific items, nor is it alleged that such sums were reasonable, and we find no proof which would sustain any such allegation.

For the reasons hereinbefore discussed, the judgment is reversed, and the cause remanded.