## TEXAS & P. RY. CO. v. FEAGAN.
### No. 11589.

Court of Civil Appeals of Texas. Dallas.
Feb. 16, 1935.

T. D. Gresham and R. S. Shapard, both of Dallas, and Head, Dillard, Maxey-Freeman & McReynolds, of Sherman, for appellant.

Randell & Randell, of Sherman, and J. H. Randell, of Denison, for appellee.

BOND, Justice.

The appellee, J. T. Feagan, instituted this suit in a district court of Grayson county against the appellant, the Texas & Pacific Railway Company, to recover damages for personal injuries claimed to have been sustained by him as the result of an automobile, in which he was riding, overturning.

Appellee contends that the overturning of the automobile was due to the negligence of the appellant in failing to exercise ordinary care in the construction, operation, and maintenance of its line of railway at the intersection of a public highway, thus causing chug holes to be within its rails and about the crossing, the intersection rough, uneven, worn, out of repair, with bumps and high rails and without ballast, and on account of which the automobile in which appellee was riding was jolted and jarred, and the pins and other fastenings and holdings of the right front wheel caused to break loose from the axle and the car overturning, resulting in serious, painful, and permanent injuries to appellee.

The appellant answered, by general denial, and specially alleged that it exercised due care to have the tracks and crossings at the intersection in proper condition and it was in good condition at the time in question, smooth and free from chug holes; that the automobile in which the appellee was riding was old, its parts worn, and, if any pins and other fastenings and holdings of the front wheel broke or break loose from the axle, such was not due to the condition of the crossing, but was caused by the old worn-out car and its parts; and further alleged that there were three other persons riding in the car with appellee, thus overloading the same, and after crossing the tracks, at a high rate of speed, the operator of the automobile turned a sharp curve in the road, causing the bolts and fastening of the automobile to break, overturning the car, all of which were the sole proximate cause of the overturning and injuring the appellee.

The case was submitted to the jury on special issues, and it found: (1) That the defendant company failed to keep and maintain the crossing in a reasonably safe condition for the passage of automobile traffic, same was negligence and the proximate cause of appellee's injuries; (2) that the car in which plaintiff was riding did not have defective spindle bolts on the right front wheel; (3) that the car was not overloaded; and (4) that $5,000 would reasonably and fairly compensate the plaintiff for his injuries.

Based on the findings of the jury, the court rendered judgment in favor of the plaintiff for the sum of $5,000.

The first proposition is based on the action of the court in submitting to the jury, as an element of damage, the loss of appellee's earning capacity, on the ground that the evidence is insufficient to warrant the submission of the issue, in that, there was no evidence as to appellee's earning capacity, or how much he earned before he claims to have been injured, and no evidence of his earning capacity, if any, or how much, if any, he has earned since his injury.

On the submission of the issue as to the amount of money that will reasonably and fairly compensate plaintiff for the injuries he sustained, the court charged the jury as follows: "You are instructed that in determining your answer to the foregoing question you will take into consideration such mental anguish, if any, and physical pain, if any, he has suffered to date and such mental anguish, if any, and physical pain, if any, as is reasonably probable he will suffer in the future, *together with such decreased capacity, if any, to labor and earn money to date, and such decreased capacity, if any, to labor and earn money in the future, as is reasonably probable he will suffer in the future.*" (Italics ours.) The defendant timely excepted to that part of the charge which instructed the jury that they may take into consideration, in determining the amount to be paid to the plaintiff, "such decreased capacity, if any, to labor and earn money to date, and such decreased capacity, if any, to labor and earn money in the future as is reasonably probable he will suffer in the future."

■ We sustain the contention as urged in the proposition: There is no evidence to support the charge that appellee's earning capacity had been diminished, or sufficient to have enabled the jury to form an intelligent judgment as to the amount of damages sustained by appellee, even if his earning capacity had been diminished and his ability to do hard work on the farm had been impaired.

The appellee testified, and his testimony is all there is bearing on the issue, that before he got hurt he worked mostly as a farm hand on his farm; was deputy sheriff for several years and deputy constable for about eight or ten years; that at the time he got hurt, he was sixty-four years of age, was "tolerable peart," and could do as much farm work or any other work as any one; that he was strong and able to do any sort of farm work, weighed about 180 or 185 pounds; that since his injuries, he testified, he has tried to find out what he could do on the farm in the way of farm work; that his shoulder hurt him to lift anything; that when he went to harness his mule he could not get his harness up; that he could hardly throw the harness on the mule; that he had tried to work by riding a cotton planter and cultivator for three or four days, but could not hold out to do the work; that he has never felt like putting in a day riding a cotton planter or cultivator, such work made him sore; that, at times, he would ride the cultivator until noon and then rest until towards night; that his brother put the seed in the planter and things like that, and he would ride.

It will thus be seen that no data whatever was furnished the jury to enable them to form an intelligent conclusion as to the extent of appellee's incapacity to earn money. It is not shown by appellant's testimony what he earned or was capable of earning as a farmer prior to his injuries, nor the extent of his farming operations, whether he cultivated a fraction of an acre or many acres; what he cultivated, whether wheat, corn, oats, cotton, or garden produce, or what was produced on the farm; or how and in what manner he worked the farm, whether he rented it for money rent or a portion of the crops raised, or he worked on a salary basis. The jury undoubtedly could form no intelligent conclusion on the disclosure that appellant lived on his farm and worked as a farm hand, "pretty peart," and furthermore there is nothing to show appellee's earnings as a deputy sheriff, or what he is capable of earning as such since his injury. We are of the opinion that the verdict of the jury could, therefore be nothing more than the result or expression of a mere guess or conjecture. The testimony is wholly insufficient to show what was appellee's earning capacity before he was injured and prove no fact which would enable the jury to reach the conclusion as to appellee's loss sustained in impairment of ability to earn money.

■ It may be conceded that the appellee was not required to prove the amount, but he was required to prove facts from which the jury may determine without guess or conjecture the amount that will fairly compensate him for the loss he sustained. As stated in the case of St. Louis Southwestern R. Co. of Texas v. Acker, 44 Tex. Civ. App. 560, 99 S. W. 121, 122: "While a large discretion is allowed the jury in fixing damages of such a character, their verdict is not supposed to be a mere conjecture, but an intelligent judg-

ment, based upon proof laid before them of facts from which their conclusion is to be drawn." (Citing authorities.)

In the case of St. Louis Southwestern R. Co. of Tex. v. Smith, 38 Tex. Civ. App. 507, 86 S. W. 943, 944, 946, Judge Talbot, speaking for this court, said: "It was not essential that the value of such services [farming and railroad service], or the extent to which appellee's earning capacity had been affected, should be established with exactness; for in the assessment of damages of this character the amount must necessarily be referred in a measure to the sound judgment and discretion of the jury. This does not mean, however, that their verdict may be the result and expression of a mere guess or conjecture. Although the plaintiff is not required to prove the amount, he is required to prove facts from which the jury can determine intelligently the amount, that will fairly compensate him for the loss sustained. The mere proof of previous avocation and the character of his injuries will not suffice. [Citing authority.]"

In the case of South Plains Coaches v. Behringer (Tex. Civ. App.) 32 S.W.(2d) 959, 960, the court in its opinion said: "We cannot sustain the contention as urged in the proposition that there was no evidence in support of the allegations in the trial amendment that appellee's earning capacity had been diminished, but we are convinced that the evidence upon this issue is insufficient to enable the jury to form an intelligent judgment with reference to the amount of damages sustained by him, even if his earning capacity has been diminished, though there is testimony tending to show that his ability to do hard work on the farm has been impaired to an uncertain extent." In that case, the testimony was very similar to that in the case at bar. The injured party testified that he had been a farmer practically all his life before he went into the mercantile business; that he was 40 years old at the time of the trial, and a little past 36 when he was injured. Since his injuries he has conducted a café a month or two. Then moved to a farm, where he had been farming ever since; that he was a tenant farmer, but he did not testify with reference to his income as a farmer either before or after he was injured. With reference to his ability to labor continuously, since the injury, he was partially disabled at times by attacks of headache which he and two physicians attributed to the injury.

It will be seen in the above-cited case, so, also, in the instant case, that no data whatever was furnished the jury showing to what extent his capacity to earn money had been diminished. There was no evidence to show what he was capable of earning as a farmer prior to his injuries, nor was there any testimony to enlighten the jury as to his earnings as a tenant farmer since he was injured. The cited case was reversed on similar assignment, as the one here presented.

■ By further assignments, the appellant insists that the court erred in refusing to submit to the jury the following special issues and accompanying charge on unavoidable accident:

"Do you find from a preponderance of the evidence that the injuries, if any, sustained by plaintiff, were not the result of an unavoidable accident?"

"Answer: 'They were the result of an unavoidable accident' or 'they were not the result of an unavoidable accident' as you find from the evidence."

"In connection with the foregoing question, and for your guidance in answering same, you are instructed that 'unavoidable accident' as used therein means a sudden event or occurrence not due to, or caused by negligence."

The writer is of the opinion that the issue of unavoidable accident is clearly raised by the evidence, in that there is evidence in the record tending to show that the accident happened unexpectedly without fault, and from a cause different to that claimed by appellee, and not brought about by negligence.

It must be conceded that there is evidence in the record showing that the accident was a very unexpected occurrence; the appellee contends that it was due to the negligence of the railroad company in its failure to maintain and keep the crossing in a safe condition for automobile traffic, setting out in detail the particulars in which the railroad company was negligent; the appellant controverts this contention and further raised the defense of new and independent causes for the accident, in that, the spindle bolt to the right axle was worn, the automobile was old, a one-seat T model Ford coupé, and overloaded with four men riding therein; that before making the crossing the automobile encountered rough and choppy roads, causing the car to be jolted and bounced; and that, after making the crossing, the highway abruptly turned, and in making the turn the

car overturned, and the disclosure after the overturning was a broken spindle bolt.

The issue as contended by appellee as to the negligence of appellant in failing to maintain the crossing in a reasonably safe condition was submitted to the jury, as was also the issues as contended by appellant that the car had a defective spindle bolt and was overloaded at the time. True, the jury answered appellee's contention in the affirmative and that of appellant in the negative, yet, in my opinion, the issue of an unavoidable accident being clearly raised, it should have been submitted albeit such findings of the jury.

The cause of the spindle bolt breaking, thus precipitating the occupants of the automobile to the ground, was a matter of pure inference or conjecture arising either from the faulty condition of the railroad crossing or the vice in the spindle bolt, or the overloading of the automobile, or all concurring in the overturning of the automobile. The issue having been joined both in pleadings and evidence as to the condition of the railroad crossing and that same may or may not have caused the spindle bolt to break, and likewise the issues that the car was old, the spindle bolt worn, and time tending to crystallize the spindle bolt, making it more brittle and easy to break, and the car overloaded, may or may not have caused the spindle bolt to break. There is no direct testimony in the case as to what caused the spindle bolt to break, or when it broke. The reason for its breaking necessarily must be arrived at by the process of reasoning from cause to effect.

In the case of American Glycerin Co. v. Kenridge Oil Co. (Tex. Civ. App.) 295 S. W. 633, 635, it is said: "Where the cause of an accident is unknown and the evidence fairly raises the issue that it happened without fault of any one, and from a cause different to that claimed by plaintiff, a question of unavoidable accident arises." Again, expressed in slightly different language but to the same effect and meaning, in Dallas Railway Co. v. Alexander (Tex. Civ. App.) 23 S.W.(2d) 512, 513, it is said: "The issue of 'unavoidable accident' arises only when 'there is evidence tending to show that the accident in controversy, which is charged to have resulted from the negligence of the defendant, happened from some unknown cause, or in a manner which cannot be explained, or under circumstances differing from those relied on and constituting a part of plaintiff's case, and which circumstances rebut the charge of alleged negligence for which the defendant is responsible.'"

The issue of appellant's negligence and its resulting damage, as also the issues raised by appellant to appellee's negligence and the causes of the accident, having been submitted to the jury and determined by them, in my opinion, raises no presumption that the jury might not have found differently on the issue of unavoidable accident. Judge Looney of this court correctly states the rule in Dallas Railway & Terminal Co. v. Allen, 43 S.W. (2d) 165, 170, in which he said: "The rule is well settled that no presumption will be indulged, from finding of the jury on affirmative and defensive issues of negligence, that the jury might not have found differently, on the issue of accident, if submitted distinctly and separately. [Citing authorities.]"

Under the facts of this case, as viewed by the majority of this court, they not being in accord with the writer's views conclude that this assignment should be overruled; but are inclined to the opinion that, in view of another trial and the closeness of the question involved, the issue should be submitted for a determination of the jury.

We have considered the further contentions of the appellant; they are overruled; and for the reasons above stated, the judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.