DALLAS RAILWAY & TERMINAL CO. v. GUTHRIE.

No. 14875.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 31, 1947.

On Suggestion of Remittitur Nov. 7, 1947.

Rehearing Denied Dec. 12, 1947.

Burford, Ryburn, Hincks & Ford, Bruce Graham and Howard Jensen, all of Dallas, for appellant.

Touchstone, Wight, Gormley & Touchstone and O. O. Touchstone, all of Dallas, for appellee.

HALL, Justice.

Appellee, A. F. Guthrie, brought this suit in the District Court of Dallas County, Texas, for personal injury damages sustained as the result of a collision between appellant's street car and appellee's automobile. Judgment was rendered for appellee in the sum of $42,500 based on jury findings. The appellant has perfected this appeal by submitting nine points of error.

In answer to issues, the jury found the following facts favorable to the appellee, which were negligence and a proximate cause of the injury:

The motorman of the westbound street car failed to keep a proper lookout; such westbound street car was being operated at a speed of 30 miles per hour or over; such street car was being operated at an excessive rate of speed; that the operator failed to sound or ring the bell; that the operator failed to apply the brakes; that

the operator failed to have the street car under proper control; that the appellee was in a position of peril; that the operator of the street car discovered such perilous position but after such discovery and realization he failed to exercise due care; that the operator of the street car gave no signal to appellee before the collision.

On all of the affirmative defenses of appellant, the jury found the following in favor of appellee:

The appellee did not fail to keep a proper lookout on the following: For the westbound street car, before he turned into the intersection, and before he drove upon the street car track. The appellee was not guilty of negligence in failing to permit the street car not involved in the accident to pass before attempting to turn left; that the appellee did not stop his automobile suddenly in front of the street car in question; the appellee did not fail to give a signal of his intention to turn left; that appellee did not stop his automobile immediately before the accident; that appellee did not undertake to pass the westbound street car immediately prior to the collision.

Appellant's point No. 1 is as follows:

The court erred in placing the burden of proof upon appellant to secure an affirmative answer to Special Issue No. 19–A, which inquired whether other traffic upon the street was the sole proximate cause of the collision.

Special Issue No. 19 inquired whether there was other traffic than the street car involved in the accident in or near the intersection of St. Joseph and Bryan Streets where and when the accident occurred, to which the jury answered that there was. Special Issue No. 19–A, the one which appellant complains of because the court erred in placing the burden of proof upon it, is as follows: "Do you find from a preponderance of the evidence that such traffic, other than the street car involved in the accident in question herein, and the plaintiff's automobile, was the sole proximate cause of the accident between defendant's street car and plaintiff's automobile? Answer 'Yes' or 'No'", to which the jury answered "No."

Appellant duly and timely objected to the form of Special Issue No. 19–A for the reason that it improperly placed upon the appellant the burden of proof to obtain an affirmative answer thereunder, which the trial court overruled. Appellant properly and timely called the court's attention, in paragraph 4 of its amended motion for a new trial, to the effect that the burden of proof was improperly placed on Special Issue No. 19–A.

The facts show that appellee, A. F. Guthrie, was proceeding in a southwesterly direction on Bryan Street in Dallas, Texas, before the collision; that appellant's street car was proceeding in the same direction; that appellee planned to make a left-hand turn on to St. Joseph Street from Bryan Street and testified that he had passed appellant's street car (the one which struck him) some distance east of St. Joseph Street and had stopped on appellant's street car track in order to allow an eastbound street car, owned by appellant, and other traffic on Bryan Street to pass; that he had remained stopped for some time when appellant's westbound street car collided with the rear end of his automobile. Appellant's testimony was to the effect that appellee passed its street car immediately before he reached St. Joseph Street and that he swerved his automobile suddenly into the path of appellant's street car and stopped so suddenly that appellant's operator did not have sufficient time nor distance in which to stop his street car.

The court allowed the appellant to file the following trial amendment: "* * * Defendant denies that there was any traffic in or near the intersection of St. Joseph and Bryan Streets, at the time and on the occasion in question, other than the defendant's westbound street car and plaintiff's automobile. In the alternative, defendant would show to the court that traffic, in addition to plaintiff's automobile and defendant's westbound street car, singly and collectively, was a new and independent cause, and in the alternative a sole proximate cause of the injuries, if any, sustained by A. F. Guthrie, plaintiff herein. * * *"

■ The above alternative pleadings of the defendant are sufficient to raise the issue of sole proximate cause especially in the absence of an exception if the evidence supports such pleadings; which will necessitate a search of the transcript to determine as to whether or not the issue of sole proximate cause should have been submitted to the jury.

■ It is now the settled law that the burden of proof upon the issue of sole proximate cause rests upon the plaintiff. Hicks v. Brown, 136 Tex. 399, 151 S.W.2d 790. The issue on sole proximate cause, submitted in the instant case, placed the burden of proof upon the defendant and if there is sufficient evidence to raise the issue before a jury we will have no alternative but to reverse the case.

■ The law is well settled to the effect that the act of a third party does not have to be a negligent act in order to require the submission of the issue of sole proximate cause. Fort Worth & D. C. Ry. Co. v. Rowe, Tex.Civ.App., 69 S.W.2d 169; Dallas Railway & Terminal Co. v. Stewart, Tex.Civ.App., 128 S.W.2d 443; Fort Worth & D. C. Ry. Co. v. Bozeman, Tex.Civ.App., 135 S.W.2d 275, writ dismissed, correct judgment.

The act of the third parties solely causing the accident involved in this case could only be the result of the eastbound traffic either being parked or traveling parallel with and in opposite direction with the car of appellee and the street car of appellant, and to make such eastbound traffic the sole proximate cause of the injury, it would have to be of sufficient nature to have caused appellant's westbound street car to run into the rear of appellee's automobile, which was on the street car tracks, with such force that it knocked such automobile diagonally across the street and into a telephone post, thereby breaking the post.

■ We have searched the record and do not find sufficient testimony to show that neither the operator of the street car nor the operator of the automobile in question could have both been free from negligence which was the proximate cause of the injury. The operator of appellant's street car, to-wit: L. C. Brewer, testified in substance that the appellee was driving along the side of the street car which he was operating, when all of a sudden he whipped over in front of the street car and that they were both going along about 16 miles per hour when the appellee, without warning except the stop lights on appellee's car, began to immediately stop and that his car was all the way from 30 ft. to 50 ft. back of appellee's car and that he immediately threw on the brakes and applied sand thereto but was unable to stop before colliding with appellee's car. He further testified that there was no traffic to the left nor to the right of appellee. This, of course, would distort appellant's theory that other traffic was the sole cause of the accident.

If appellant rests upon appellee's theory of the case, to-wit: that he passed appellant's street car several blocks back from the scene of the accident and that he had driven up to the intersection where the accident occurred and stopped his car, that he was there quite some time waiting for traffic on his left to clear in order that he might make a left-hand turn and that after waiting some time appellant's street car, without warning, struck him, it would thereby destroy any reasons for submitting to the jury the issue of sole proximate cause.

Appellant does not cite any testimony supporting the theory of other traffic being the sole proximate cause of the accident. After considering the evidence most favorable to appellant's theory, the most issue we find that such traffic could raise would be unavoidable accident, which was properly submitted to the jury, there being nothing to indicate an unusual or extraordinary amount of traffic over and above that which both the appellee and appellant were not accustomed to. Dallas Railway & Terminal Co. v. Darden, Tex.Com.App., 38 S.W.2d 777. We find the presence of such traffic was merely a condition and circumstance in the usual and customary course of travel and that the facts in the instant case are not the same as those in the case of Dallas Railway & Terminal Co. v. Stewart, supra.

It has also been held that the issue of sole proximate cause and the issue of unavoidable accident must rest on proof of some act independent of the negligence of the parties involved in the wrongful act. Hicks v. Brown, supra; Dodd v. Burkett, Tex.Civ.App., 160 S.W.2d 1016, writ refused, want of merit.

The proof further shows that even though there were a few clouds in the sky that the sun was shining and that there was nothing between the street car and the automobile of appellee to obstruct the view of the operator of the street car; neither was there any traffic immediately in front of appellee's car to have prevented him from going straight down the street. The accident happened in broad daylight. We find, therefore, that the record is not free from negligence of one or the other of the parties and that it was up to the jury to decide these questions of fact. We, therefore, overrule appellant's point No. 1.

Appellant's points Nos. 2, 3 and 4 read as follows:

(2) The court erred in allowing the witness, M. W. George, to express his opinion that appellee's profits would have been $427,837 over a period of twenty-eight years.

(3) The court erred in permittinig appellee's witness, M. W. George, to testify as to the profits of appellee's business based solely upon books, records and accounts not properly proven.

(4) The court erred in admitting in evidence the records and accounts of appellee's business because said records were not properly proven.

Appellant complains of the introduction of the testimony of the auditor, M. W. George, who had been compiling appellee's income tax since about 1941 or 1942. The witness was first placed on the stand and attempted to prove the net profit of appellee's business, and upon the objection of appellant the court held that the books and records of the business were the best evidence. Later the witness was recalled by appellee, and he had with him copies of appellee's income tax returns; the court again refused to allow him to testify without the books and records; for the third time he was placed on the witness stand and had with him records which he said covered appellee's business during the years 1945 and 1946. The records were in the form of sales slips and invoices. The witness did not keep these records but from them he testified that the net profit of appellee's business in 1943 was $3,428.29. He further testified that the profit in 1946 had dropped to $1,845.33; that from the records he had, the business continued to drop off during January, 1947, and that the business would no doubt be closed on March 1, 1947; this statement was corroborated by appellee's wife. He further testified that the business had been increasing about ten per cent annually until the time of the accident. When asked to give his opinion as to what the net profit would have been in twenty-eight years if it continued to increase at ten per cent a year, he answered $427,837. Appellee testified that his net earnings from his business were from $3,000 to $3,500 per year. It was proved by a mortality table that appellee had a life expectancy of twenty-eight years. The principal contention of appellant is that the measure of damage in this suit was to recover for loss of earning capacity only and was not entitled to recover for loss to the profits of his business and that the witness, M. W. George, was not competent to testify from the facts he had at hand. The appellant further contends that the appellee was suffering from a case of tuberculosis at the time of the collision and he was therefore not able to attend his duties in connection with his business, and further, that he probably would not live longer than a year or two. The jury found that he was entitled to the sum of $27,500 for lost earning capacity. We do not find appellant's contention well taken. The fact that appellee had tuberculosis at the time of the collision did not keep him from transacting the duties of his business. Appellee testified that at the time of the accident he not only managed the business but that he did the buying, taking of orders, measuring of uniforms and did all the odds and ends that go with owning and managing a small business and that immediately prior to the time he entered into this business, he had been an in-

surance salesman; that his business was known as Progress Linen Supply Company and that he not only leased out linen and uniforms, but that he manufactured some of them in his place of business. The witness, M. W. George, was a certified public accountant and had been checking appellee's business since 1941. He testified that there were no original books kept by appellee and that he made out the income tax returns by an examination of the checks, invoices and charge tickets of appellee's business. The court refused to let George testify until such records were available to the other side for the purpose of scrutiny and cross-examination of the witness. The appellant did thoroughly cross-examine the witness with reference to the matters testified to by him and proved upon such cross-examination that the testimony, with reference to the accumulation of the increased profits over a period of twenty-eight years, was merely an estimate. We find that the objection went to the weight rather than the admissibility of George's estimate that appellee would have made $427,837 in twenty-eight years out of his earnings in the business.

◼ In the proof of lost earning capacity, the appellee is not called upon to establish the exact amount of damages but was required only to prove the facts from which the jury can determine the proper amounts. South Plains Coaches, Inc., v. Behringer, Tex.Civ.App., 32 S.W.2d 959, 961, writ of error dismissed. In the Behringer case, supra, it quotes: "In 17 C.J., 896, it is said: 'There is no distinction between loss of earnings and loss of time as to the necessity of proof of their value. In either case such proof is ordinarily essential to support a recovery but where a plaintiff is engaged in such a business that there is no rule by which the value of the time lost from it may be well ascertained, the jury may, in their discretion, from all of the facts before them award an amount sufficient as reasonable compensation for time lost and a similar rule, it seems, will apply in a case where plaintiff loses time as a result of his injuries but is unable to prove its value because he was not at the time of the injury engaged in any service or business.'" The Behringer case also quotes from Gulf, C. & S. F. Ry. Co. v. Greenlee, 62 Tex. 344, 351, as follows: "In this character of case every particular and phase of the injury ought to enter into the consideration of the jury. Such as whether the injury is permanent or transitory; its effect upon the physical system; whether in its nature calculated to produce death or grave apprehensions of death; loss of time; diminished ability to earn money by the usual avocation of the party. * * * In support of each of these elements evidence is admissible, and it is incumbent upon the party seeking redress, so far as the nature of the case admits and within reasonable limits, to fully enlighten the jury by evidence as to each element of damage claimed." See 25 C. J.S., Damages, Measure of Particular Elements, § 86. Also § 38 same text.

The Behringer case, supra, was reversed for the lack of the very testimony which was offered in the instant case and of which the appellant complains. See also Triangle Cab Co. v. Taylor, Tex.Civ.App., 190 S.W.2d 755, affirmed by the Supreme Court in 192 S.W.2d 143.

◼ We further find that the court did not err in allowing the auditor to testify. Ellison v. Ellison, Tex.Civ.App., 164 S.W. 2d 775, writ refused, want of merit; Gregg v. Middle States Utilities Co. of Delaware 228 Iowa 933, 293 N.W. 66, 132 A.L.R. 415.

Appellant's contention that the testimony relative to the profits derived from the business should not have been introduced in appellee's application for lost earning capacity is not well taken because the only way he could show his earning capacity was to show what he was making in his business, even though he did not sue for the loss of his business. We think the cases above cited on this point will justify the introduction of the evidence surrounding appellee's activities in order to furnish sufficient evidence for the jury to pass upon the question of his earning capacity.

This case is analogous to the case of Wisconsin & Arkansas Lumber Co. v. Standridge, 132 Ark. 535, 201 S.W. 295, 297, wherein the Supreme Court of Arkansas said: "It is insisted that the court erred in instructing the jury that they

might consider the decrease in the earning capacity of appellee, if any, in arriving at its verdict; for the reason, it is said, that the evidence fails to show that appellee's earning capacity was, or would be, diminished in the future. There was evidence tending to show that appellee was compelled to give up in a large measure the trade of blacksmithing, and that his eyesight was impaired. The impairment of one's eyesight alone is sufficient to warrant the inference that his earning capacity has been decreased."

Appellant's point No. 5 is as follows:

The court erred in failing to hold that the jury's answer to Special Issue No. 21–B, awarding $27,500 for earning capacity was excessive.

 Appellee's medical testimony in this case shows that he is suffering from atrophy, which means a shrinkage or withering of the brain, caused directly from the blow on the head which he received in this accident. This disease causes shooting pains to be suffered by the patient from the head and other symptoms, such as dizziness. Appellee's medical testimony further shows that such injury of the head is and was not caused in any way by or connected with the arrested case of tuberculosis which he had at the time of the injury, and in this connection the court charged the jury as follows: "In reaching your answer to Special Issues Numbers 21, 21–A, 21–B, 21–C and 21–D, you will not award plaintiff any sum of money for or because of his tuberculous condition, tuberculous *menengitis,* collapsed lung, *empyeme, enemia* or thyroid deficiency, if any, either in the past or in the future, except and only in so far as same may have been aggravated, if any, by the accident in question." His medical testimony further shows that he received a severe injury to his neck and it is necessary for him to wear a brace, that he evidently received a bone injury to his neck; that he is in such a condition that he would not be able to testify in his case as it would cause him to have a breakdown, that he is much worse at the time of trial than he was when they first saw him about a month

after the accident; that there is no chance for improvement. From his entire medical testimony it is easily deducted therefrom that he will be an invalid the rest of his life. From such testimony, the jury's finding of $27,500 for his loss of earning capacity is not excessive, taking into consideration the present purchasing power of the dollar, which the jury has the right to do.

Appellant's point No. 6 is as follows:

The court erred in failing to hold that the jury's answer to Special Issue No. 21–A, awarding $5,000 for past and future hospital bills, was excessive.

We find some merit of contention in appellant's point of error No. 6, wherein it complains of the court's sustaining the jury's finding of $5,000 awarded for past and future hospital expense as being excessive. We find one of appellee's doctors, to-wit: Dr. Austin, who is not a brain specialist, testifying that there is only one thing that could be done that might help him and that would be to take half of his brain out, and she testified that such operation is a big one, that she is not familiar with it but it has been done under some conditions similar to this one but she does not know whether appellee is able to have it done or not, that it is a very radical operation. This supposition of hospital service to be rendered in the future is made questionable by the testimony of Drs. Nash and Patterson, testifying as follows:

Dr. Nash:

"Q. State what your opinion is with reference to whether or not the condition you found with respect to his brain injury, whether in your opinion he is totally and permanently disabled from it. A. Yes, in my opinion he is.

"Q. Is there any operation that you as a brain surgeon would recommend that might help this man? A. No.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Are you able to tell from your X-rays the percentage of atrophy or shrinkage that this man got in his brain? A. No, we do not try to figure percentages, we think it is extensive or very slight.

"Q. What would you say in this case? A. I would think it was quite extensive."

Dr. C. E. Patterson testifying:

"Q. What is your diagnosis of his condition at this time? A. A generalized injury to his brain with atrophy.

"Q. What about his neck? A. That he had an injury to his neck so that he is unable now to properly use it.

"Q. Do you know of any operation that would cure or help the condition that you found his brain injury in? A. No, sir.

"Q. Is there anything medical science can do for this man within your knowledge? A. Just in that they can keep his general health as well as possible and build him up as much as possible and keep him comfortable.

"Q. Is that all that can be done for him? A. As far as I know, yes, sir."

■ Appellee proved several itemized expenses which he had incurred from the date of the accident until the date of the trial, among which was one item, 10-15-46, Methodist Hospital, $48. All the other items included medicine, special candy, ambulance bill, doctors' bills, X-ray bills and a bill for a brace. The brain specialist testified that he will be out as much in the future for doctors' bills, hospitalization and medicine as he has been in the past. There was no medical testimony to the effect that it would be necessary for him to spend any particular length of time in the hospital in the future, the specialist having testified that there was nothing the medical profession could do for him except to give him comfort and strength. It has been noted that the issue was submitted for hospital bills incurred up to the time of the trial and which may reasonably and necessarily be incurred by appellee in the future. We do not construe this to include medicine and nurses' bills which he may have paid out and which he may pay out in the future and the evidence on hospitalization alone is insufficient to support the finding of $5,000 as it only shows an expenditure of $48 during the first fifteen months. We find the maximum amount which could have been rendered under the judgment would have been twenty times forty-eight, the amount of time in years which the doctor said was possible that appellee could live. The judgment is therefore excessive to the extent of $5,000, proper disposition of which will be made at the close of this opinion and in our judgment.

Appellant's point No. 7 is as follows:

The court erred in failing to hold that there was no evidence to support the jury's answer to Special Issue No. 8-B, to the effect that appellant's operator saw and realized appellee's position of peril in time to have avoided the collision.

■ Without quoting all the testimony pertinent to this issue, we will only say that appellant's position is not well taken for the reason that there was ample testimony produced which would support the jury's finding that appellant's operator saw and realized appellee's position of peril in time to avoid the collision. We will, however, state that the witness, L. R. Massey, who claimed to be about four automobiles' length behind appellant's street car, testified that he himself saw appellee's automobile stopped on the street car track about 400 ft. ahead of the street car and that such street car was traveling at the rate of 30 miles per hour and increasing its speed. The appellant's street car operator testified that there was nothing in front of him to obstruct his vision from seeing the automobile of appellee and that he saw appellee's car along the side of his street car before it got in line ahead of him. Appellant's contention is therefore overruled.

Appellant's points Nos. 8 and 9 read as follows:

(8) The court erred in limiting the inquiry in Special Issue No. 18 to "immediately" before the accident.

(9) The court erred in conditioning Special Issues Nos. 18-A, 18-B and 18-C on an affirmative answer to Special Issue No. 18.

It is true that appellant did object to the way and manner Issue No. 18 was submitted, said issue being as follows: "Do you find from a preponderance of the

evidence that plaintiff's automobile overtook and passed appellant's street car immediately before the accident in question." The appellant pleaded that appellee was negligent in violating Article 85–118, subdivision (c) of the City Code of the City of Dallas, which ordinance reads as follows: "The driver of a vehicle upon overtaking and passing a street car shall not turn in front of such street car so as to interfere with or impede its movement."

 We think the issue properly submits appellant's independent ground of defense as to whether or not appellee violated the ordinance. Furthermore, the finding on discovered peril would render any complaint as to these issues immaterial. Montgomery et al. v. Houston Electric Co., 135 Tex. 538, 144 S.W.2d 251; Wilson v. Southern Traction Co., 111 Tex. 361, 234 S.W. 663. We therefore overrule appellant's Points Nos. 8 and 9.

Since we have found that the judgment of the trial court rendered in favor of appellee as against appellant in the sum of $42,500 is excessive by the sum of $5,000, if appellee will file a remittitur in the sum of $5,000 on or before the 13th day of November, 1947, the judgment of the trial court will be reformed accordingly and as reformed will be affirmed; otherwise, the judgment of the trial court will be reversed and the cause will be remanded. Leave is hereby granted to all parties to file motions for rehearing within fifteen days after the date when we enter final judgment as above indicated.

## On Suggestion of Remittitur

On October 31, 1947, we indicated by an opinion in writing that if appellee would file a remittitur of $5,000 on or before November 13, 1947, the judgment of the trial court would be reformed, and as reformed would be affirmed, and that otherwise the judgment of the trial court would be reversed and the cause remanded. Appellee has filed the suggested remittitur of $5,000.

Accordingly, as of this date, the judgment of the trial court is reformed by deducting the amount of $5,000 from the judgment recovered by appellee, and as so reformed, is affirmed.

One-fourth of the costs of appeal will be taxed against appellee, and three-fourths. against appellant.

Motion for rehearing may be filed by any party within fifteen days after this date.